# C. C. LEE v. PEOPLES COOPERATIVE SALES AGENCY, INC.[1]

November 19, 1937.

No. 31,247.

*Harold E. Stassen* and *Fallon Kelly,* for appellant.
*Perkins & Frogner,* for respondent.

HILTON, JUSTICE.

October 26, 1935, plaintiff sold 12 head of livestock to one Max Seerup for $429.92. To pay for the cattle, Seerup drew a draft on the defendant's account at the Drovers Exchange State Bank of South St. Paul, Minnesota, and tendered it to the plaintiff. When

[1]Reported in 276 N. W. 214.

the draft was presented to the defendant by the bank, it refused payment. This action was brought to recover the reasonable value of the cattle, plaintiff claiming that Seerup acted as the agent of the defendant in making the purchase.

It appears that Seerup had been a cattle buyer and trader for several years. Defendant is a commission firm located at South St. Paul and is engaged in the business of buying and selling livestock on commission. It had an agreement with Seerup that it would honor drafts drawn on it for the net proceeds of cattle shipped to it. Defendant supplied Seerup with drafts to use, one of them being the draft given plaintiff. Before giving out these drafts, defendant stamped its name on them in the blank provided for the name of the drawee. The following language appeared on the face of the draft:

"This draft is made and delivered to the Drovers Exchange State Bank of South St. Paul, Minnesota, for deposit and immediate credit of the same upon the books of said bank to the account of drawer and is drawn upon and against a particular fund created and to be created in the hands of payor, by the shipment this day by us to the payor of 12 head of cattle of an aggregate weight of 10,765 pounds, and said entire fund or so much thereof as may be necessary to meet this draft is hereby assigned to said Drovers Exchange State Bank."

Of the 12 head of stock bought from the plaintiff, six were shipped to the defendant with several other cattle purchased by Seerup and for which he had similarly issued drafts to pay therefor. The net proceeds from the sale of these cattle were not sufficient to pay all of the drafts, and defendant refused to accept plaintiff's draft. The other six head of cattle of the plaintiff's were sold or traded by Seerup himself. There is some evidence that Seerup sent to the defendant $200 of the amount received therefrom, and that the defendant had notice that the money was from that source. However, this is denied by the defendant. Additional facts will appear hereinafter.

The case was submitted to the jury on the sole issue of agency. It returned a verdict for the plaintiff, and defendant appeals from an order denying a motion for judgment notwithstanding the verdict or a new trial.

We agree with defendant's claim that the evidence does not sustain the conclusion that Seerup was its agent for the purpose of purchasing the cattle in question. We cannot reiterate too often the principles governing agency. They are a continual source of confusion to bench and bar alike, particularly in their application to the specific fact situations presented by the cases. Much of this confusion probably results from the fact that very often the evidence tending to prove the existence of an agency is also evidence of the nature and extent of the agent's authority. Before any question of actual authority arises, however, it must first be determined whether a principal and agent relationship in fact exists. If it does not, no question of actual, as distinguished from apparent, authority is involved.

The treatment given the subject in the comparatively recent Restatement of Agency does much to simplify the application of the pertinent fundamentals. Agency is therein defined as (§ 1[1])—

"the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."

Again, with respect to these manifestations of the parties, it is said (§ 15):

"An agency relationship exists only if there has been a manifestation by the principal to the agent that the agent may act on his account, and consent by the agent so to act."

The following definition has been given by this court:

"Agency arises where the principal authorizes the agent to make engagements in the name of the principal. Dun. Dig. § 141. Agency depends upon the will of the principal, either expressed or implied from the particular circumstances." Witzman v. Sjoberg, 164 Minn. 411, 412, 205 N. W. 257.

The language in the first statement of our definition is perhaps subject to the criticism that it is not all-inclusive, and may suggest an inference that agency does not exist if the agent is not authorized to act in the name of the principal. It is, of course, well settled in this state, as it is in all jurisdictions, that an agency may exist and liability be imposed upon an undisclosed principal by his agent acting in his own name. 1 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934, 1937) § 216. The definition in the Restatement is well worded and may well be adopted by us.

The important thing, then, is to look at the manifestations of the parties and endeavor to determine whether they tend to show on the one hand consent of the alleged principal manifested to another that the latter shall act on his account, and, on the part of the latter, consent so to act. Keeping this in mind, the evidence in this case clearly disproves the existence of an agency. As will be pointed out, there is no showing of such consent on the part of either the defendant or Seerup.

Seerup, testifying for the plaintiff, stated that in buying and selling livestock he was acting for himself, and that the stock he purchased was his own. The profit or loss on these transactions was his. He sent stock bought by him from third parties to the defendant to be sold, paying it a commission fixed by the government for reselling it for him. Defendant also received whatever expenses it incurred in the handling or feeding of livestock while in its possession. Any balance left from the proceeds of the livestock, after deducting defendant's commission and such expenses, and also the amount advanced Seerup on the drafts, was paid to Seerup. Defendant paid Seerup neither commission nor expenses. On one or two instances it did advance him money for expenses, but the evidence shows that these were loans to be repaid by Seerup, and not expenses to be borne by the defendant. The defendant gave Seerup no instructions as to the price to be paid for livestock he purchased or where he should buy it—those were matters for his decision. He signed the draft in his own name and not as agent. The language on its face apprised the plaintiff of defendant's position in

the transaction and the extent of its liability. Nothing thereon indicated that Seerup was its agent.

Plaintiff relies on the fact that the defendant supplied Seerup with the drafts with its name stamped on them as tending to prove the agency. There is no merit to this contention. The evidence shows that these drafts were available to any customer of the defendant who wanted them. To hold that by giving them to Seerup defendant made him its agent to purchase livestock on its behalf would be the equivalent of saying that each person to whom such drafts were given was defendant's agent for a similar purpose. Obviously, by this conduct, defendant did not in any way manifest its consent to Seerup that he should act as its agent. The mere fact that defendant's name was stamped on the drafts as drawee does not alter the situation. It was probably done for the convenience of its customers, and would in no way indicate to them that defendant thereby consented to their acting as its agents in purchasing stock.

Plaintiff was permitted to some extent to show the prior course of dealing between Seerup and defendant as bearing on the existence of an agency between them. While such evidence may be admissible for that purpose, it is of course elemental that it must reasonably tend to have the effect claimed for it. For the most part, these transactions were similar to that now before us and have no tendency to show an agency. Stress is also laid on the fact that defendant on prior occasions honored drafts drawn by Seerup in such transactions. Again, however, that fact alone has no tendency to prove that Seerup was defendant's agent in those transactions. As stated in Seattle Shoe Co. v. Packard, 43 Wash. 527, 530, 86 P. 845, 846, 117 A. S. R. 1064:

"But there was no authority of agency established here. The only presumption that could arise from the payment of drafts was the presumption that the maker of the draft had credit with the respondents at the time the draft was presented."

It is entirely possible that in previous transactions with Seerup the drafts contained the same provision as the one in the instant

case as to the fund from which they were to be paid, and that they were accepted and paid from that fund. It is not necessary to set out these transactions in detail. It is sufficient to state that we have examined them and hold that they in no way indicate the existence of an agency.

The evidence fails to show any consent of the defendant, manifested to Seerup, that he act as its agent, or consent on his part so to act. It must be borne in mind that we have been dealing with the question of the existence of an actual agency. Plaintiff also claims that Seerup had apparent authority to act for defendant. We do not discuss the evidence relied on to support this claim. It is settled that in order to establish liability on the theory of apparent authority it must be shown that the facts which tend to show apparent authority were known to and relied upon by the person dealing with the alleged apparent agent. Karon v. Kellogg, 195 Minn. 134, 261 N. W. 861; 1 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934, 1937) § 156, note 15; 2 Am. Jur. § 103, p. 85. There is not the slightest evidence that the plaintiff relied on or was misled in any way by the circumstances he claims establish apparent authority. There is no evidence that he even thought he was dealing with an agent. From the evidence it may just as well be concluded that he dealt with Seerup as the principal or other party to the sale of the cattle. The words on the face of the draft were notice to the plaintiff that the draft was payable only from a particular fund to be created from the proceeds of the shipment and sale of the cattle, and were notice of the conditions and extent of defendant's liability. There is some suggestion that plaintiff should be relieved from any notice or information provided by these words because they were in small print and of such a character that a person of ordinary prudence could not, upon reading them, determine their effect or the conditions they imposed. Without discussing the soundness of this general proposition, we must again say that there is no evidence whatever that the plaintiff failed to notice the printed matter in question or that he was misled by it or failed to comprehend the import of the words used. In the

absence of such evidence, we cannot assume that he was, and the claim is entitled to no further consideration.

This action is not on the draft, and we are not here concerned with the legal incidents of that instrument. The evidence does not sustain the verdict, and there must be a reversal. No claim of ratification is made. Plaintiff for the first time on this appeal argues that recovery should be allowed on the theory of an equitable assignment, citing First Nat. Bank v. Rogers-Amundson-Flynn Co. 151 Minn. 243, 186 N. W. 575. The rule is that a party cannot change or shift his position on appeal. 1 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934, 1937) § 401. The case was tried and submitted on the sole theory of agency between Seerup and the defendant, and that is the only theory we consider on this appeal. Defendant concedes liability for the sum of $124.88, the net proceeds left after the sale by it of the 33 head of cattle (six of them the plaintiff's) sent to it by Seerup. We express no opinion as to whether this is the extent of its liability or whether plaintiff may, on any theory, recover also the $200 he claims Seerup turned over to the defendant from the proceeds of the six head of cattle of the plaintiff's disposed of by Seerup. Plaintiff's choice of weapons is his own, and we are not presently concerned with any other possible grounds of recovery that he may have.

Reversed and new trial granted.