EDWIN DILLON v. CLARENCE GUNDERSON AND OTHERS.
KAYE CORPORATION v. SAME.
SUPERSWEET FEED COMPANY, APPELLANT.[1]

November 30, 1951.

Nos. 35,487, 35,488.

---

[1]Reported in 50 N. W. (2d) 275.

Streissguth, Berens & Rodenberg, for appellant.
Wilson, Blethen & Ogle, for respondents.

KNUTSON, JUSTICE.

Appeals in two cases from an order denying the motion of defendant Supersweet Feed Company to set aside a service of summons on the ground that service was not made on an officer or managing agent of the company as required by M. S. A. 543.08.

Supersweet Feed Company is a domestic corporation subsidiary to and wholly owned by Central Bi-Products, Inc. It operates several plants, one of which is located at Mapleton, Minnesota. On June 29, 1950, summons and complaint in these actions for the recovery of damages for personal injuries were served on one A. F. Anderson, an employe of Supersweet Feed Company, by the deputy sheriff of Blue Earth county. Thereafter, an answer was interposed on behalf of the company and the individual defendants by K. M. Krost, an attorney at law of Mankato, Minnesota. It is the contention of the company that A. F. Anderson was not a managing

agent or officer thereof and that K. M. Krost had no authority to answer for it or to make any appearance in its behalf.

The company appeared specially and moved the court to set aside the service of summons. The court found that Anderson was a managing agent and also that K. M. Krost had been authorized to appear as attorney for the company and thereupon denied the motion. These appeals followed.

■ The order is appealable. Curran v. Nash, 224 Minn. 571, 29 N. W. (2d) 436.

■ The statutory provision involved is M. S. A. 543.08, which, so far as here material, reads:

"If the action be against a private domestic corporation, the summons may be served by delivering a copy thereof to its president, vice-president, secretary, cashier, or treasurer, or to any director or managing agent thereof."

In Hatinen v. Payne, 150 Minn. 344, 346, 185 N. W. 386, 387, we defined "managing agent," as used in this statutory provision, as follows:

"* * * the officers upon whom this statute authorizes service to be made, unless a 'managing agent' be an exception, are the principal executive officers of the corporation, and all of much the same rank. In view of the connection in which the term 'managing agent' is used, we think the legislature intended thereby only those agents who possess powers similar in character and importance to those possessed by the officers expressly named; that they intended only those agents who have charge and control of the business activities of the corporation or of some branch or department thereof, and who, in respect to the matters entrusted to them, are vested with powers requiring the exercise of an independent judgment and discretion. This is the meaning usually given to the term 'managing agent.' 26 Cyc. 123; 19 Enc. Pl. & Pr. 662, 680; 9 Fletcher, Cyclopedia of Corporations, 10, 380, and the cases cited in these works."

It is not always easy to formulate a rule that will govern in all cases. The rule stated in 42 Am. Jur., Process, § 109, is as follows:

"* * * it may be said that an agent of a domestic corporation, whose contract of employment demands of him the exercise of judgment and discretion in the business affairs of his principal, and who has charge of the property and business of his principal in the locality where he is stationed, is 'a managing agent,' upon whom service of summons may be made."

See, Brophy v. Fairmont Creamery Co. 98 Neb. 307, 152 N. W. 557, L. R. A. 1918A, 367, involving service upon one who was in charge of one of the defendant's purchasing stations.

■ Where an employe is entrusted with the management of the business of the corporation in the absence of one generally acting in the capacity of manager, he is the "managing agent" within the meaning of our statute while so acting. He need not necessarily be in charge of the entire business of the corporation, but it is sufficient if he is entrusted with such duties as would require the exercise of judgment and discretion in the operation of the branch or division of the business where he is located while he is left in charge.

■ The motion here involved was heard on affidavits and oral testimony of witnesses for the interested parties. The evidence so submitted is conflicting. Two of the deputy sheriffs of Blue Earth county, in their affidavits, state that they have known Anderson for some time; that they have had occasion to serve legal documents, including executions and garnishment summons, upon Supersweet Feed Company at Mapleton and that they have served them upon Anderson without any objection; and that Anderson appeared to them to be actually in charge of the business. One of the deputies had been informed that one Joseph Eustice was the Mapleton manager of the company, but that he was gone much of the time, and that when he was gone the employes of the company would refer affiant to Anderson as the manager.

Arthur H. Ogle, attorney for plaintiffs in the actions, stated in his affidavit that he had been personally acquainted with Anderson for many years; that when Eustice and Anderson appeared at public occasions they both promoted the affairs of the company; that they were both introduced as representatives of the company; that when

affiant called at the office of the company to inquire concerning the relationship of defendant Gunderson to the company he was referred to Anderson by Eustice as the one who had charge of that feature of the business; and that affiant thereafter carried on an extensive discussion with Anderson concerning the affairs of the company.

J. E. Wells, Jr., both by affidavit and orally, testified that he was executive vice president and general manager of Central Bi-Products, Inc., the parent company; that Supersweet Feed Company was a subsidiary of and wholly owned by Central Bi-Products, Inc.; that the affairs of defendant company were entirely under his management; that Anderson was employed as purchasing agent of Supersweet Feed Company and had no other duties or authority; and that affiant lived in St. Paul, but spent part of his time in Mapleton and in other places where the company had other plants.

On the question relating to the retaining of K. M. Krost as attorney and his authority to interpose an answer, Krost testified orally that after the service of the summons on Anderson one Burnham called at his office in Mankato with one or both of the individual defendants; that after they had discussed the case together Burnham stated that as long as Krost was representing the individual defendants he should take steps to protect the interests of defendant company also; and that thereafter affiant interposed the answers on behalf of the company and appeared as its attorney at the call of the calendar.

Mr. Wells testified that Burnham was employed principally as traffic manager and also as assistant to the general manager in operations at Mapleton. He denied that Burnham had authority to retain counsel, claiming that he alone had that authority.

Marion M. Burnham testified orally that he was assistant manager of Supersweet Feed Company at Mapleton. With respect to his duties, he stated that "The assistant manager has to take charge of the place when the manager is away." He stated that he did not employ Krost, but, on the contrary, told Krost that he had no

authority to retain counsel. He admitted that he was informed of the action in July "when papers were brought out to the company." He also admitted going to the office of Krost with defendant Gunderson, and that after discussing the case with Krost he knew that the company had been sued.

Whether Anderson was a managing agent within the meaning of the statute was a question of fact. Similarly, it was a question of fact whether Burnham had authority to retain counsel and in fact did so. Both questions have been determined adversely to defendant company.

■ The rule is that when a trial court has passed upon a question of fact on a motion its determination will not be reversed on appeal unless it is palpably contrary to the evidence. Sometimes we have said that where the evidence is such that it might reasonably induce different conclusions in different minds the determination of the trial court thereon will be affirmed on appeal. Kueffner v. Gottfried, 154 Minn. 70, 191 N. W. 271; Fleischmann v. N. W. Nat. B. & T. Co. 194 Minn. 227, 260 N. W. 310; Thornton Bros. v. Johnson-Schaffer Drug Co. 195 Minn. 385, 263 N. W. 108; Lincoln Nat. L. Ins. Co. v. Brack, 196 Minn. 433, 265 N. W. 290; Meddick v. Meddick, 204 Minn. 113, 282 N. W. 676; 1 Dunnell, Dig. & Supp. § 410.

We are of the opinion that both findings of the court are supported by the evidence submitted, and the decision should be affirmed.

Affirmed.