GEORGE DERRICK v. THE DROLSON COMPANY, INC.[1]

March 11, 1955.

No. 36,398.

[1]Reported in 69 N. W. (2d) 124.

*Thomas E. Dougherty,* for appellant.

*Mordaunt & Mordaunt* and *Peter F. Walstad,* for respondent.

DELL, CHIEF JUSTICE.

Action to recover damages for personal injuries. Defendant moved for an order dismissing the action or, in lieu thereof, quashing the return of summons on the defendant on the ground that it was never properly served. Plaintiff appeals from an order granting defendant's motion and quashing the return of summons.

The evidence relating to defendant's motion was submitted to the trial court in the form of affidavits and depositions. The defendant, a Minnesota corporation doing business within this state, owned several business properties in Minneapolis, consisting of a building located at 2023 Hennepin avenue, the Northwestern Federal Building, the Northwestern Federal parking lot, and the Pence Annex. Plaintiff claims that on January 1, 1948, as a result of defendant's negligence, he suffered personal injuries on the property located at 2023 Hennepin avenue. On December 28, 1953, a summons and complaint in this action were given to Philip Holp, an experienced process server, with instructions to serve the defendant corporation. After making inquiries as to the location of The Drolson Company, Holp went to 506 Northwestern Federal Building, the door of which office displayed the following listings:

"NORTHWESTERN FEDERAL
BUILDING OFFICE

"EDWARD J. VOGT
REALTOR
"RENTAL OFFICE
MONROE REALTY & INVESTMENT CO.
THE DROLSON CO. INC.
E. J. VOGT, AGENT"

According to Holp, upon entering the office he inquired of one of the two girls present for an officer of The Drolson Company and was directed to Edward J. Vogt, who was then standing in the doorway to his private office. Holp asked Vogt if he was an officer and the managing agent of The Drolson Company, to which inquiry Vogt allegedly replied in the affirmative. Holp thereupon served Vogt with the summons and complaint.

Vogt denied that he said he was either an officer or managing agent of the defendant corporation. On the same day the summons and complaint were served, Vogt delivered them to the office of Joseph Nathanson, who was an officer of and the attorney for the defendant. Vogt, who is not an officer of the defendant corporation, first testi-

fied that he managed the Northwestern Federal Building, the Northwestern Federal parking lot, and the Pence Annex for the defendant pursuant to a "management contract." At a subsequent date he testified that he operated the Northwestern Federal Building as an agent for Investors Diversified Services, Inc., which organization had become the mortgagee in possession. Vogt collected the rents for these properties; signed and issued checks drawn on defendant's bank account for the necessary operating expenses; and generally managed the properties. One-half of the office at 506 Northwestern Federal Building was occupied by Monroe Tapper, an officer of defendant corporation, and two secretaries, one of whom was paid by The Drolson Company with a check signed by Vogt, and the other by a check drawn on the account of "Edward J. Vogt, Agent." Both Vogt and The Drolson Company had a common telephone number, the telephone service being paid for by the defendant. The defendant's books and records were maintained at 506 Northwestern Federal Building. In addition to managing the properties mentioned, Vogt operated a small insurance business and acted as a part-time rental agent for other commercial properties.

■ Service of summons upon a domestic corporation is governed by Rule 4.03 of the Rules of Civil Procedure, which provides in part:

"Service of summons within the state shall be made as follows:

\*  \*  \*  \*  \*

"(c) **Upon a Corporation.**

"Upon a domestic or foreign corporation, by delivering a copy to an officer or managing agent, or to any other agent authorized expressly or impliedly or designated by statute to receive service of summons, \* \* \*."

Since Vogt was not an officer of the defendant corporation, and it is not claimed that he was either designated by statute or expressly authorized to receive service, we are here concerned only with whether he was (1) a "managing agent" of the defendant corporation or (2) an agent "impliedly authorized" to receive service.

Before determining either of these questions, it is first necessary to ascertain whether, in fact, there was an *actual* agency relationship.[2] It is the defendant's contention that at no time did Vogt act as its agent, much less its managing agent or its agent impliedly authorized to receive service. An agency is defined as "the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."[3] The manifestations of Vogt and the defendant placed them squarely within this definition. Pursuant to an express agreement, Vogt managed certain of defendant's properties; collected rents on them; and issued checks on defendant's bank account. It follows that he acted on behalf of the defendant and subject to the defendant's general control. Under the circumstances present here there can be no doubt that Vogt was an actual agent of the defendant corporation.

Defendant argues that under the terms of the management contract Vogt was an "independent contractor." Assuming defendant's contention to be valid, it does not alter our conclusion that there was an agency relationship. The term "independent contractor" is used in contrast with "servant" in determining a "master's" vicarious tort liability, and sometimes with "employee" in ascertaining liability of an "employer" under various types of social legislation. As aptly pointed out in Restatement, Agency, an independent contractor may or may not be an agent, and the distinction is obviously of no significance in resolving questions such as those presented by the instant case.[4]

---

[2]For the purposes of receiving service of summons, an agency relationship created by estoppel or implication of law has been held in this state not to be sufficient. Wold v. J. B. Colt Co. 102 Minn. 386, 114 N. W. 243 (involving ostensible agent of foreign corporation); see, Annotation, 30 A. L. R. 176.

[3]Restatement, Agency, § 1(1). This definition was adopted by this court in Lee v. Peoples Co-op. Sales Agency, Inc. 201 Minn. 266, 276 N. W. 214.

[4]See, Restatement, Agency, § 1, *comment d,* and § 2. Section 2, *comment b,* concludes: "While an agent who contracts to act and who is not a servant is therefore an independent contractor, not all independent contractors are agents." But see 9 Fletcher, Cyclopedia Corporations (Perm.

■ Service upon a domestic corporation by delivering a copy of the summons to a "managing agent" was authorized prior to the adoption of the new rules by virtue of M. S. A. 1949, § 543.08, the first paragraph of which provided:

"If the action be against a private domestic corporation, the summons may be served by delivering a copy thereof to its president, vice-president, secretary, cashier, or treasurer, or to any director or managing agent thereof."

In Hatinen v. Payne, 150 Minn. 344, 346, 185 N. W. 386, 387, the term "managing agent" as used in this statute was defined as follows:

"* * * In view of the connection in which the term 'managing agent' is used, we think the legislature intended thereby only those agents who possess powers similar in character and importance to those possessed by the officers expressly named; that they intended only those agents who have charge and control of the business activities of the corporation or of some branch or department thereof, and who, in respect to the matters entrusted to them, are vested with powers requiring the exercise of an independent judgment and discretion."

This somewhat restrictive definition was quoted with approval in the comparatively recent case of Dillon v. Gunderson, 235 Minn. 208, 210, 50 N. W. (2d) 275, 276.

While the context in which the term "managing agent" is used in M. S. A. 1949, § 543.08, is changed in some respects by Rule 4.03(c), there is no indication of any intention to change the meaning previously ascribed to it.[5] An examination of cases from other jurisdictions interpreting similar terminology[6] reveals that the courts

ed.) § 4380, where the author concludes that as used in statutes fixing venue of actions against corporations, the term "agent" does not include "independent contractors."

[5]The definition attributed to "managing agent" in Hatinen v. Payne was noted by the Advisory Committee. See, Minnesota Rules of Civil Procedure, Tentative Draft, p. 20.

[6]E.g., New York Civil Practice Act, § 228(8), permits service on a domestic corporation by delivery of a copy of the summons "to the presi-

have avoided adopting any rigid rule but have examined the facts of each particular case in the light of a general definition of "managing agent," usually similar to that used by this court in Hatinen v. Payne.[7] This is particularly true in New York, where the problem has arisen on numerous occasions. In that state the general definition of "managing agent" that is used as a guiding principle is as follows:

"* * * A managing agent must be some person invested by the corporation with general powers involving the exercise of judgment and discretion, as distinguished from an ordinary agent or attorney, who acts in an inferior capacity and under the direction and control of superior authority, both in regard to the extent of his duty and the manner of executing it."[8]

The courts have also emphasized, and we feel properly so, the rationale behind the requirement, namely, that the agent must be one who could reasonably be expected to apprise the corporation of the service and the pendency of the action.[9] It follows that the significant factors in determining whether a particular agent is a "managing agent" for the purpose of receiving service are the extent to which

dent or other head of the corporation, the vice-president of the corporation, the secretary, or assistant secretary, or clerk to the corporation, the cashier, an assistant cashier, the treasurer or assistant treasurer or a director or managing agent." While Federal Rule 4(d)(3) also employs the term "managing agent," the federal cases interpreting it have been almost exclusively concerned with service on foreign corporations, which necessarily involves different considerations than those present in the instant case.

[7]See, e.g., Sage v. Oil Country Specialties Mfg. Co. 138 Kan. 501, 27 P. (2d) 542; Kron v. J. C. Robinson Seed Co. 111 Neb. 147, 195 N. W. 939; 9 Fletcher, Cyclopedia Corporations (Perm. ed.) § 4416.

[8]This definition originally appeared in Taylor v. Granite State Provident Assn. 136 N. Y. 343, 346, 32 N. E. 992, 993, and has been subsequently quoted in a large number of cases, e.g., Spano v. Elizabeth A. Horton Memorial Hospital, Inc. 81 N. Y. S. (2d) 692; Kiely v. Utica Gas & Elec. Co. 134 Misc. 258, 235 N. Y. S. 288; Seldin v. Caledonian Ins. Co. 121 Misc. 444, 201 N. Y. S. 213; Loeb v. Star & Herald Co. Inc. 187 App. Div. 175, 175 N. Y. S. 412.

[9]See, Roehl v. The Texas Co. 107 Cal. App. 691, 291 P. 255, discussing at length the history of the New York decisions.

the agent has power to exercise independent judgment and discretion in executing the business of the corporation, and whether his position is of such a character and rank as to make it reasonably certain that the corporation will be apprised of the service. It is also apparent that, for obvious reasons, there is a tendency to construe the term more narrowly in actions involving domestic corporations, where service is a relatively simple matter, than where service is attempted on a foreign corporation.[10]

Examining the facts of the instant case in light of these principles, we conclude that there is ample evidence to support a conclusion that Vogt was a "managing agent" of the defendant corporation. Although grossly lacking in particulars, the evidence shows that here the business of the corporation was dealing in real estate; and, while there is no definite evidence as to the extent of the real estate owned by it, the record fairly shows that Vogt managed a substantial part of defendant's properties. This situation is not comparable to that of an agent managing a building for a corporation whose primary activity is entirely foreign to the real estate business. The extent of Vogt's power to exercise discretion and independent judgment is shown, among other things, by the authority he had to sign and issue checks on the defendant's bank account. To what degree the defendant controlled Vogt's activities with respect to its property is not shown by the evidence. It can be reasonably inferred, however, that at least the incidents of management ordinarily connected with the type of property involved rested solely with Vogt. Clearly Vogt was not an ordinary agent both as regards the extent of his duty and the manner of executing it.

Moreover, it appears that Vogt's position was of sufficient rank and character as to insure that the defendant would be notified of any service of summons made on him. Certainly the characterization of "custodian" that is attributed to Vogt by the defendant does not, as that term is ordinarily used, accurately reflect his position. We are of the opinion that, generally speaking, an agent who, as in

---

[10]See, Freeman v. Keltner, 175 Kan. 37, 259 P. (2d) 228; Kiely v. Utica Gas & Elec. Co. 134 Misc. 258, 235 N. Y. S. 288.

the instant case, collects rents, issues checks for operating expenses, and supervises buildings owned by a corporation engaged in the real estate business, is a "managing agent" of that corporation.[11] We shall pass for the moment, however, the ultimate question of whether the evidence here is so conclusive as to require a reversal of the trial court's determination to the contrary.

■ The portion of Rule 4.03 (c) which permits delivery of a copy of the summons to "any other agent authorized expressly or impliedly * * * to receive service of summons" is new in this state as concerns service on domestic corporations generally[12] and differs in terminology from the corresponding federal rule.[13] According to the notes of the Advisory Committee, Rule 4.03 (c) was intended to "permit service upon agents so authorized under common law principles of agency." It "amends the present statutory law by increasing the scope of persons to be served in the case of a domestic corporation," and the phrase "is broader than a 'managing agent', which has received a rather settled definition."[14] It is well established that implied authority is actual authority circumstantially proved and is dependent upon the intention of the parties. It includes such powers as are directly connected with and essential to

[11]See, Merryfield v. F. M. Hoyt Shoe Corp. (D. N. H.) 41 F. Supp. 794, reversed on other grounds (1 Cir.) 128 F. (2d) 452, holding that an agent who collected rents, kept books, and supervised buildings for the mortgagee, the Reconstruction Finance Corporation, was a managing agent of that corporation for the purposes of receiving service of process, both before and after foreclosure of the mortgage.

[12]M. S. A. 1949, § 543.08, provided for service of summons upon a foreign corporation by delivery to "any of its officers or agents," and M. S. A. 1949, § 543.09, permitted service upon a domestic or foreign express company by delivery to "any agent."

[13]Federal Rule 4 (d) (3) provides for delivery "to any other agent authorized by appointment or by law to receive service of process." See Annotation, 26 A. L. R. (2d) 1086, and 2 Moore, Federal Practice (2 ed.) pars. 4.12 and 4.22, for interpretations of this provision. It has been suggested that the change in terminology in the Minnesota rule was intended to avoid the ambiguity present in the federal rule. See, 1 Youngquist & Blacik, Minnesota Rules Practice, p. 60.

[14]Minnesota Rules of Civil Procedure, Tentative Draft, pp. 19 to 20.

the business expressly entrusted to the agent.[15] Apparent or ostensible authority, on the other hand, is not actual authority but is that which the principal holds the agent out as possessing or knowingly permits the agent to assume.[16] We are not, therefore, concerned with whether Vogt was "held out" by the corporation as being authorized to accept service but rather with whether he had the actual authority to receive it; that is, whether such authority was necessary and incidental to the express authority granted.

While the rule may thus be simply stated, its application in a particular factual situation is often difficult. The decisions dealing with this question have been primarily concerned with agents of foreign corporations, and, since the determination of the extent of authority reposed in a foreign agent is almost always closely intertwined with the question of whether the corporation is "doing business" within the state for jurisdictional purposes, we feel that these cases are of little assistance in resolving the problem at hand. However, of significance here is the often-quoted language of the United States Supreme Court in Connecticut Mut. L. Ins. Co. v. Spratley, 172 U. S. 602, 617, 19 S. Ct. 308, 314, 43 L. ed. 569, 574:

"* * * If it appear * * * that the character of the agency is such as to render it fair, reasonable and just to imply an authority on the part of the agent to receive service, the law will and ought to draw such an inference and to imply such authority, and service under such circumstances and upon an agent of that character would be sufficient."

The court further noted that denial of such authority by other officers of the corporation is of no significance.

Although the parties here, for some unapparent reason, did not see fit to offer in evidence the "management contract" frequently referred to in the testimony, we feel that Vogt's authority to accept service can reasonably and fairly be implied from the kind and character of the agency relationship which the record shows existed.

---

[15]Cauger v. Gray Motor Co. 173 Minn. 370, 217 N. W. 347; 1 Dunnell, Dig. (3 ed.) § 153.

[16]1 Dunnell, Dig. (3 ed.) § 156.

When an agent is given broad authority to manage a part of a corporation's business, it follows that he is also, by implication, given the authority to receive service of summons involving actions against the corporation. Such authority is clearly inherent in and necessary to the proper management of the corporation's affairs. Moreover, practical considerations, as well as fairness and justice, require that the implied authority extend to receiving service in matters connected, not only with the particular portion of the corporation's business that has been entrusted to the agent, but with the corporation's business generally. If a corporate officer's duties extend only to a particular phase of the corporate enterprise, as is often the case, it would be absurd to say that he did not have the implied authority to accept service of a summons involving a legal matter arising in another department over which he has no managerial duties. Similarly, the fact that the action in the instant case concerned an accident allegedly occurring in a building which was not among those managed by Vogt does not materially affect the extent of the authority that can be fairly implied to him.

█ From these observations it is evident that were we the triers of fact we would have no difficulty in concluding that Vogt was both a "managing agent" and an agent "impliedly authorized" to accept service for the defendant corporation. Such, however, is not our function. The scope of our review is governed by the familiar rule that, if different minds might reasonably come to opposite conclusions regarding a question of fact, the determination of the trial court must stand. This is true even though, as we have previously observed, "The foundation for the rule is less substantial where all the evidence is documentary than where it comes from witnesses whom the court sees and hears."[17] The question in the instant case is clearly one of fact.[18] Nevertheless, we feel that, even if fair-minded men might reasonably differ as to whether Vogt was a "managing agent" in the strict sense of that term, there can be no reasonable dispute that he was included within the broader concept of an agent "impliedly authorized" to receive service. In reaching this conclusion we have

[17]Kueffner v. Gottfried, 154 Minn. 70, 72, 191 N. W. 271, 272.

[18]Dillon v. Gunderson, 235 Minn. 208, 50 N. W. (2d) 275.

not ignored the rule, correctly stated by defendant, that the fact that the corporation promptly received notice of the service from Vogt has no effect on the validity of the service.[19] Under the particular facts of this case, the character of the agency relationship was clearly such as to make delivery of the summons to Vogt valid service on the defendant within the meaning and intent of Rule 4.03(c), which, like other procedural rules, should be liberally construed.[20] However reluctant we may be to interfere with the trial court's determination of a question of fact, we are compelled to do so in the instant case.

Reversed.

[19]Seldin v. Caledonian Ins. Co. 121 Misc. 444, 201 N. Y. S. 213; see, Goetz v. Interlake S. S. Co. (S. D. N. Y.) 47 F. (2d) 753.

[20]See, Collini v. Turner Const. Co. 129 N. Y. S. (2d) 485, 486.