DIETZEN, Justice
(concurring in part, dissenting in part).
I join in Part II of the court’s opinion, but disagree with Part III and the related portion of Part IV, and therefore respectfully dissent. In my view, Part III of the *273 court’s opinion is contrary to the requirements of Rule 4.05 and the new amendment to Rule 3.01(b) of the Minnesota Rules of Civil Procedure, as well as settled agency law. The above-mentioned rules and this court’s agency precedent establish that a writing either signed by the defendant or. electronically submitted by the defendant is prima facie evidence of authority to accept service of process. Because both were, absent in this case, the district court found there was nothing in the record establishing the authority of an alleged agent to accept service of process on behalf of the individual defendants, and therefore the DeCooks* attempted service was ineffectual. The -court ignores the requirements of the rules and our precedent, and reverses the district court’s finding on the dubious argument that the representations of an alleged agent (a medical compliance officer) were sufficient to establish prima facie evidence of authority to accept service. Because the court’s opinion is contrary to, and significantly undermines, the clear mandate of .the rules of civil procedure and .settled agency law, I dissent.,
L
On, January 8j .2014, .with a mere .2, weeks remaining on a. 4-year statute of limitations,[1] the DeCooks! legal 'counsel,[5] Steve Offutt, contacted the Risk-Management- Department of the Olmsted Medical Center (the Medical Center) to discuss service of process on the Medical Center and the individual doctors and nurses,- Of-futt spoke to -Barbara Graham, R.N., the Medical Center’s Compliance Officer. Following a phone conversation with Graham — the content of which is unknown— Offutt, and his associate, Patrick Thron-son, began corresponding with Graham via e-mail In an e-mail to Graham dated January 8, 2014, Offutt stated, “I understand you know you cati accept for the [Medical Center] and the named doctors I read off to you .tonight,” and also “that if these nurses still work there then you should be able to accept for them as well.” But, he. noted,
I need something back from you that affirms that your job/position at the [Medical Center] allows you to accept service and that you are in fact agreeing to accept' service. We will then e-mail you all the documents and send a hard copy to you in the mail. I may need a form filled out and signed.[2]
Offutt also requested that Graham help him identify-a particular “Jane Doe” nurse that the DeCooks also wished to- serve with process. The next day* Graham emailed Offutt, stating that if he was “looking for an in person-service,” then “we will need to do something different”; but “if by email, I am authorized to accept service for the [then-identified doctors and nurses].” - Five days later, upon learning the identity of the Jane Doe nurse, Graham informed Offutt: “[the Jane Doe nurse] has given me her ok to accept service for her.” That same day, Thronson attempted to serve Graham by e-mailing her the summons, complaint) and two copies of an acknowledgement form. The next day, Graham personally signed one of the acknowledgment, forms and returned it to Thronson. .
The record ■ provides no evidence that Offutt and Thronson attempted to personally contact the individual defendants to verify whether Graham could accept service or agree to alternative forms of service- on their behalf. Nevertheless, Thron-son asserted in an affidavit, “I was made *274 to understand that Nurse Graham was -authorized by Defendants to accept service of process on behalf of all Defendants,” and “I was also made to understand ... that Defendants would and did accept ■ service by email.” The DeCooks, however, presented no evidence from the individual defendants indicating that they ever provided any authority to Graham, relating to service of process. Based on the foregoing, the district court found that “[t]here is nothing in the record” substantiating -the claim that the individual defendants had in fact “authorized Graham to accept service on their behalf.” (Emphasis added.)
II.
The court relies upon the faulty premise that the representations of an alleged agent are prima facie evidence of authority to accept service of process. But settled agency law rejects- this notion, and. our rules of civil procedure provide that the plaintiff must establish authority to accept service of process through,the submission of a writing either signed by the defendant or- electronically submitted by the defendant. See Minn. R. Civ. P..3.01(b); Minn. R. Civ. P. 4,05. The DeCooks. did not submit either.
We review de novo whether service of process was effectual. Shamrock Dev., Inc. v. Smith, 754 N.W.2d 377, 382 (Minn.2008). In doing so, we must apply the factual findings of the district court unless those findings are “clearly erroneous.” Id. (citing Minn. R. Civ. P. 52.01); In re Knops, 536 N.W.2d 616, 620 (Minn.1995) (“Findings of fact; whether based on oral or documentary evidence; shall not be set aside unless clearly erroneous.... ”); Derrick v. Drolson Co., 244 Minn. 144, 154, 69 N.W.2d 124, 131 (1955) (noting that whether the person served was an agent authorized to accept service on behalf of a corporation was “clearly one of fact”). When assessing whether a finding is clearly erroneous, we view the evidence in the record in the light most favorable to the district court’s finding. In re Pamela Andreas Stisser Grantor Trust, 818 N.W.2d 495, 507 (Minn.2012). We do not reject a finding merely because we “view[] the evidence differently.” Rogers v. Moore, 603 N.W.2d 650, 656 (Minn.1999). Instead, the finding must be “manifestly contrary to the weight of the evidence or not reasonably supported by the' evidence as a whole.” Id. (quoting N. States Power Co. v. Lyon Food Prods., Inc., 304 Minn. 196, 201, 229 N.W.2d 521, 524 (1975)). Simply put, to overturn a finding of fact we must be “left with the definite and firm conviction that a mistake has been made.” Id. (quoting Fletcher v. St. Paul Pioneer Press, 589 N.W,2d 96, 101 (Minn.1999)).
It is well-settled that the ultimate'burden of proving insufficient service of process is upon the defendant. Holmen v. Miller, 296 Minn. 99,104, 206 N.W.2d 916, 919 (1973). But it is axiomatic that the plaintiff must first submit evidence sufficient to- make out a prima facie case that service was made in an effective manner.See, e.g., id.; see also Shamrock, 754 N.W.2d at 384 (“Once the plaintiff submits evidence of service, a defendant who challenges -the sufficiency of service of process has the burden of showing that the service was improper.”). In other words, the plaintiff bears the initial burden of production, and the defendant bears the ultimate burden of persuasion. See Braylock v. Jesson, 819 N.W.2d 585, 589-90 (Minn. 2012) (concluding that a “prima facie case” and coming “forward with the evidence” are synonymous, require the same quantum of proof, that defendant’s argument to the contrary confused the “burden of production” with the “burden of persuasion,” and that “[i]f a party fails to carry its initial burden of production, then the other party does not have to produce any evi *275 dence in response, even if the latter party would have the ultimate burden of persuasion”).
Service of process may be accomplished, among other methods not relevant here, by personal service or by mail. Minn. R. Civ. P. 4.03(a) (personal service); Minn. R. Civ. P. 4.05 (service by mail). The De-Cooks have clearly failed to present, any evidence of personal service.[3] Therefore, the DeCooks must satisfy, the requirements of Rule 4.05. Under that rule, service “may be made by mailing a copy of the summons and of the complaint (by first-class mail, postage prepaid) to the person to be served, together with two copies of a notice and acknowledgment Minn. R. Civ. P. 4.05 (emphasis added). Further, Rule 4.05 unambiguously provides, if acknowledgment of service “under this rule” is not reqeived within the time permitted by the rule, “service shall be ineffectual.” This acknowledgment must be signed “by the person served.” Id. (emphasis added).
The DeCooks’ attempted service did not satisfy our rules of civil procedure, and was therefore ineffectual. The DeCooks failed to provide the district court with a valid acknowledgement of service. Specifically, the acknowledgment was not signed “by the person served,” as required under Rule 4.05. Therefore, any attempted service by the DeCooks “under [Rule 4.05]” was “ineffectual.” Minn. R. Civ. P. 4.05; see also Young v. Mt. Hawley Ins. Co., 864 F.2d 81, 82 (8th Cir.1988) (noting that, under the federal rules, the requirements of waiver of service via mail must be “strictly complied with,” and that “if the acknowledgment form is not returned, the formal requirements of mail service are not met and personal service must be obtained” (citing e.g., Worrell v. B.F. Goodrich Co., 845 F.2d 840, 841 (9th Cir.1988) (“[The federal rule for service 'by mail] plainly states that service fails unless the defendant returns the signed acknowledgment form ... [and] [v]irtually every court that has examined the rulé ha's reached that same interpretation.”))).
The court attempts to sidestep the requirements of Rule 4.05 by concluding that the individual defendants consented to informal service, which the court states is “allowed in Minnesota” due to an alleged “custom and practice”[4] that has now been formally recognized by a recent amendment to Rule 3.01(b). As of July 1, 2015, Rule 3.01(b) provides:
A civil action is commenced against each defendant:
*276 [[Image here]]
(b) at the date of acknowledgement of service . if service is made by mail or other means consented to by the defendant either in writing or electronically.
(Emphasis added); see also Minn. R. Civ. P. 3.01 advisory comm. cmt. — 2015 (noting that the amendment “add[s] the" explicit provision for consent to service by any means”). This amendment was noi in effect on January 14, 20Í4, the date of the DeCooks’ attempted service and, therefore, does not apply- to this case. Even if it had been in effect, the DeCooks failed to comply with its. terms. Specifically,. the DeCooks did not produce a “writing” either signed or “electronically” submitted “by the defendant^]” indicating that they authorized Graham to accept service or agree to alternative forms of service for them. Minn. R. Civ. P. 3.01(b), By failing to do so, the DeCooks’ attempted service was ineffectual and a civil action was never commenced.
Additionally, the DeCooks failed to produce any evidence from the individual defendants establishing that they authorized Graham 'to accept service, in any form, on their behalf. The DeCooks could have produced an acknowledgment of service signed by “the person[s] served” in accordance with Rule 4.05; or. the DeCooks could have • produced a writing either signed or electronically submitted “by the defendants]” under new Rule ■ 3.01(b). But the DeCooks did not do so. Instead, the DeCooks offered oral evidence by Graham, the alleged agent, which does not satisfy their burden of production.
The court relies on Holmen v. Miller, 296 Minn. 99, 206 N.W.2d 916 (1973), and Shamrock Dev., Inc. v. Smith, 754 N.W.2d 377 (Minn.2008), for the proposition that an affidavit of service containing “unsupported assertions” is sufficient evidence to trigger a defendant’s burden to prove that service was ineffectual.[5] Supra at 271. Even assuming the court’s interpretation of these cases is correct, both cases rely on service rules that apply to situations entirely inapposite to the case at hand.[6] And *277 in relying on these cases, the court ignores an abundance of our precedent that contradicts its conclusion.
- Under Rule 4.03(c), we have long applied common law agency principles to service of . process upon corporations, which must act and receive service through its duly authorized agents. Derrick, 244 Minn, at 152, 69 N.W.2d at 130 (“According to the notes of the Advisory Committee, Rule 4.03(c) was intended to ‘permit service upon agents so authorized under common law principles of agency.’”). It logically follows that our Rule 4.03(c) precedent should apply to the service of pro-' cess issues presented in this case. Based on this jurisprudence, it is plain that the district court’s finding was not clearly erroneous.
The court points to Graham’s bald assertions that she was authorized to accept service by e-mail for the individual defendants, Graham’s position as the compliance officer for the Medical Center, and the acknowledgment of service that Graham personally signed. But, as the district court found, we have never said that this evidence is sufficient to establish authority to accept service of process on behalf of another. Rather, evidence to this effect, at most, creates apparent authority, and an agency relationship deemed sufficient for service of process must be based on actual authority, not apparent authority.[7]
Tullis v. Federated Mutual Insurance Co., 570 N.W.2d 309 (Minn.1997), is on point. In that case we considered, under Rule 4.03(c), whether the purported agent served by the plaintiff — James Priebe— was a “managing agent” and therefore “one who reasonably could be expected to inform the corporation of the service.” 570 N.W.2d at 311. The plaintiff claimed that Priebe’s representation to the process server that he was ah “executive director” was sufficient evidence to establish that Priebe was a managing agent. Id. at 312-13. We categorically rejected that claim, holding it was “not sufficient for plaintiff simply to 'claim that Priebe, as an individual, possessed] the rank and character such that he reasonably could be expected to apprise the corporation of the service.” Id. at 312 (emphasis added). Rather, the plaintiff “must examine the position Priebe held in the corporation at the time of service and the dutiés and responsibilities that accompany that position,” and “must show that the position of occupational therapist is of sufficient rank and character.” Id. at 312-13 (emphasis added). Plaintiffs reliance on Priebe’s representation, we held, /‘failed to make such a showing.” Id. at 313.
Wfe also considered whether Priebe was an agent impliedly authorized to receive service of process on the corporation’s be *278 half. Id, at 313-14. We again rejected plaintiffs claim, noting that “[i]mplied authority is- actual authority, circumstantially proved, and is to be construed under common law principles of agency.” Id. at 313. We then concluded that the plaintiff “offered no circumstantial evidence tending to prove” that the “principal [] granted implied authority to Priebe to accept service of process on its behalf.” Id. (emphasis added). Specifically, we reasoned that the plaintiffs “reliance, upon Priebe’s statement to the process server” was “misplaced,” because that “misrepresentation, at most, only reaches the level of apparent authority to receive service.” Id. Implied authority, by contrast, “is inferred from a course of dealing between the principal and the agent.” Id. (emphasis added). Indeed, we explained that, under common law principles of . agency, “[a]ll authority must be traced to the principal’s dealings with the agent; it cannot be inferred from the agent’s dealings mth third parties,” Id. (emphasis added) (citing Winkel v. Eden Rehab. Treatment Facility, Inc., 433 N.W.2d 135, 139 (Minn.App.1988)). Accordingly, we held that it was “not enough [for the plaintiff] to point to Priebe’s self-identification as executive director to the process server.” Id.; see also Winkel, 433 N.W.2d at 138-40 (reaching the same result under facts closely analogous, to those here).
The evidence adduced by the DeCooks in this case, taken as true, at best establishes that Graham had apparent authority to accept service for the individual defendants. But Tullis unambiguously holds that apparent authority is not, and cannot, be enough for effective service of process. Instead, what is required is actual authority established either by circumstantial proof gleaned from the course of dealing between the principal and agent, not the agent and a third party, or proof directly from the -principal. None of the evidence relied on by the court fits the bill and, therefore, the-district court’s finding that there is “nothing in the record” to support Graham’s authorization to accept service on behalf of the individual defendants was not clearly, erroneous. See Tullis, 570 N.W.2d at 313.
The court’s attempt to distinguish Tullis by suggesting that evidence of this nature is only insufficient if controverted by an opposing affidavit is unconvincing. First, the plaintiffs well-pleaded facts and evidence are taken as true, irrespective of whether a contradictory affidavit is submitted. See Tullis, 570 N.W.2d at 314; Winkel, 433 N.W.2d at 140; Hunt v. Nev. State Bank, 285 Minn. 77, 82-83, 172 N.W.2d 292, 296-97 (1969). But more importantly, the Tullis court did not cast its decision in light of the defendant overcoming the plaintiffs prima facie, evidence of effective service. Rather, the Tullis court framed its reasoning entirely in terms of what the plaintiff had failed to show from the start; namely, an actual agency relationship and therefore effective service upon that purported agent. Specifically, the Tullis court concluded that the plaintiff could not “simply claim” authorization or “point to” a purported agent’s representations but “must examine” the facts and “must show” prima facie evidence of effective service upon an appropriately authorized agent. See 570 N.W.2d at 312-13. The plaintiff, in Tullis, “failed to make such a showing.” 570 N.W.2d at 313-14. The DeCooks have failed in the same way. See also, e.g., Green v. Missouri, 734 F.Supp.2d 814, 856 (E.D.Mo.2010) (stating that the issue was whether the plaintiff “ha[d] provided sufficient evidence” of a purported agent’s authorization to receive service of process for the defendants, that the affidavit of plaintiffs process server stating that the agent claimed he was authorized was “insufficient to establish that *279 the ... individual was authorized, and therefore “[the plaintiff] ha[d], failed to provide any evidence that [the defendants] appointed the unnamed individual to accept service for them”), aff'd sub nom. Green v. Nocciero, 676 F.3d 748 (8th Cir.2012).
In Tullís, we acknowledged a “concern for fairness” when representations áre made by a purported agent and relied upon by the plaintiff to his or her serious detriment. 670 N.W.2d at 313. This “concern for fairness,” however, must be counterbalanced with principles of due process; that is, ensuring plaintiffs continue to take steps to effect service in a way that is “reasonably calculated” to reach the interested, party. See Mulleme v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 318, 70 S.Ct. 652, 94 L.Ed. 866 (1950); see also Wold v. J.B. Colt Co., 102 Minn. 386, 389-90, 114 N.W. 243, 243 (1907). Accordingly, in Tullís, we refused to “depart from case law which establishes an employee’s representations to a process server are inadequate to find authority to accept service.” 570 N.W.2d at 313-14. The result reached by the court today permits the plaintiff to shirk a’duty of diligence by relying upon the unconfirmed assertions of a purported agent to the detriment of the requirements of due process.
III.
In sum, the court’s opinion is not in accordance with our rules of civil procedure, old or new. The DeCooks failed to provide the district court with either a valid acknowledgment of service or a writing signed or electronically submitted by the individual defendants. More specifically, the DeCooks -failed to present sufficient evidence of effective service to meet their burden of production and shift the burden of proving otherwise to the individual defendants. On the contrary, the evidence produced by the DeCooks and relied on by -the-court, at best, evinces apparent authority, which we have categorically held insufficient to establish effective service of process. The court’s conclusion is an unwarranted upheaval of settled agency law. The district court correctly found “nothing in the record” to support Graham’s actual authority as an agent to receive service of process for the individual defendants. Accordingly, I conclude that service of process was ineffectual-..

. Minn.Stat. § 541.076 (2014)

. Offutt, however, never mailed "a hard . copy” of the process papers to Graham.

. See, e.g., In re J.M.T., 759 N.W.2d 406, 408 (Minn.2009) (“First-class mail, even if received, is simply not personal service. Personal service requires delivery to the party or to an appropriate representative.” (citing Minn. R. Civ. P, 4,03)); Kmart Corp. v. Cty. of Clay, 711 N.W.2d 485, 489-90, (Minn.2006) (holding that service was ineffectual.because the plaintiff did not deliver copies of the petition to the individual personally or leave copies with any person at the individual's usual places of abode, and because the plaintiff's alternative attempt to serve by facsimile was not authorized by Rule 4); Tullis v. Federated Mut. Ins. Co., 570 N.W.2d 309, 311 (Minn.1997) ("Service of process , in a manner not authorized by the rule is ineffective service.”).

. I acknowledge that attorneys sometimes accept service of process for their clients. But this court has never held that the mere existence of a ".custom” supports a finding of '.effective service under the rules of civil procedure, Nor'does this "custom” change the . fact that when a dispute arises, the parties must establish compliance with the rules of civil procedure. Notably, when a dispute arises, the plaintiff must show that the attorney was expressly or impliedly authorized to accept service on the ‘client's behalf. See Smith v. Spitzenberger, 363 N.W.2d 470, 472 (Minn.App.1985) (citing 7A CJ.S. Attorney & Client § 196 (1980); see also United States v. Bosurgi, 343 F.Supp. 815, 817-18, nn. 6-8 (S.D.N.Y.1972) (citing a multitude of legal authorities holding the same)).

. In other words, the court concludes that a conclusory, unsupported assertion in an affidavit is enough to create a prima facie case of service. Although we have not squarely addressed what constitutes a prima facie case in the context of effective service, we have done so in the related context of proving sufficient minimum contacts for purposes of effective service upon a foreign cotporation. Wuertz v. Garvey, 287 Minn. 353, 178 N.W.2d 630 (1970). In Wuertz, we held that a plaintiff need only, for the purpose of a pretrial motion, “make a prima facie showing of the describedMinnesota-related activities.” Id. at 355, 178 N.W.2d at 631. In considering whether a prima facie case had been made, we explained that the district court “must give every credit to the facts well -pleaded and the collateral evidence supporting it.” Id. at 355, 178 N.W.2d at 631-32 (emphasis added) (quoting Hunt v. Rev. State Bank, 285 Minn. 77, 117, 172 N.W.2d 292, 315 (1969)). A conclusory, unsupported assertion is neither a well-pleaded fact nor is it evidence and, therefore, it cannot make out a prima facie case.

. In Holmen, we concluded that a process server’s subjective assessment that a 13-year old was a person of "suitable age and discretion,” affirmed in an affidavit, was enough under Rule 4.03(a) to shift the burden to the defendant to prove otherwise.' 296 Minn. at 102-05, 206 N.W.2d at 919-20. This result was intended to avoid imposing the near impossible’burden on the process server of determining close questions of suitable age and discretion. Id. at 105, 206 N.W.2d at 920, In contrast, one does not subjectively assess whether an individual is an agent duly authorized to accept service on behalf of another, as one would assess "suitable age and discretion.”
Shamrock involved whether service by publication under Rule 4.04(a) was conclusively valid merely by submitting an affidavit containing an unsupported, yet "good-faith,” allegation that the defendant had left the state *277 with the intent to defraud creditors, avoid service, or remain concealed. 754 N.W.2d at 382-83. We held that the affidavit, standing alone, was insufficient, and that the district court must find the essential jurisdictional facts "actually exist.” 'Id. at 383. An attempt to prove presence or absence in a particular jurisdiction, at issue in Shamrock, bears no relation to, inquiries into the authority to act for another. Further, the Shamrock court's conclusion actually supports the position, discussed below, that actual, not apparent or ostensible, authority must be found for service of process upon an agent • to be effectual.

. See e.g., Hockemeyer v. Pooler, 268 Minn. 551, 565, 130 N.W.2d 367, 377 (1964) (noting that actual authority consists of express and implied authority, with express authority provided .'by an express grant by the principal, and implied authority including “only those powers that are essential to carrying out the duties expressly delegated”); Kopio’s, Inc. v. Bridgeman Creameries, Inc., 248 Minn. 348, 354, 79 N.W.2d 921, 925 (1956) (explaining that thqre must, be an "actual” agency relationship for service of process); Derrick, 244 Minn. at 148 n. 1, 69 N.W.2d at 127 n. 1 (statingthat agency-by estoppel or implication of law is insufficient for service of process).