F. G. WOOSTER and HAROLD M. JOHNSON, d/b/a WOOSTER & JOHNSON, a Partnership, Appellants, v. TRIMONT MANUFACTURING COMPANY, a Corporation.—No. 40235.—203 S. W. (2d) 411.

Division One, June 9, 1947.

Rehearing Denied, July 14, 1947.

*Francis R. Stout* and *Richard M. Stout* for appellants.

*Burnett, Stern & Liberman* and *Robert Burnett* for respondent.

 BRADLEY, C.— Action to recover $7200 commission due plaintiffs for selling defendant's products in Missouri and elsewhere. Defendant · is a Massachusetts corporation and not licensed to do business in Missouri, but its president was served·with process in St. Louis, under Sec. 880, R. S. 1939, Mo. R. S. A., Sec. 880. Defendant contended that the service was not sufficient to authorize the court to render a personal judgment against it and, limiting appearance, filed motion (in effect to quash service) to dismiss the cause. See Sec. 61, Laws 1943, p. 374, Mo. R. S. A., 847.61. The motion was sustained and plaintiffs appealed to the St. Louis Court of Appeals. That court transferred the cause to the supreme court on the theory that due process is inherent on the question of the the validity of the service upon defendant. See Wooster et al. v. Trimont Mfg. Co. (Mo. App.), 197 S. W. (2d) ·710. We think a constitutional question on due process is involved, and that jurisdiction of the appeal is in

the supreme court. Sec. 3, Art. V, Const.; Dye v. School Dist. No. 32, 355 Mo. 231, 195 S. W. (2d) 874.

Defendant manufactures pipe tools and especially pipe wrenches; sells only to the wholesale trade. It has only one factory and that is at Roxbury, a suburb of Boston, Massachusetts. Plaintiffs are manufacturers' agents and have an office in the Chemical Building in St. Louis, where they have had their office through the years of their representation of defendant. Plaintiffs (first Mr. Wooster alone) have, since 1919, represented defendant in Missouri and what is termed the Missouri area (12 other states), and have sold (taken orders for) defendant's products on a commission basis. Plaintiffs also represent other manufacturers likewise selling to the wholesale trade in Missouri and the Missouri area. Contracts between plaintiffs and defendant have been renewed at intervals, and the last one was executed March 26, 1943, and terminated by defendant December 31, 1943. Plaintiffs allege that their sales of defendant's products in Missouri and the Missouri area between April 1st and December 31, 1943, were $500,000, and that by the contract they were entitled to a commission of 7 percent on the first $100,000, and 2 percent on the remaining $400,000, or a total of $15,000. And it is alleged that defendants have paid on the commission the sum of $7800, leaving a balance of $7200.

In an endeavor to show that defendant was doing business in Missouri to such an extent as to make it amenable to the service of process, plaintiffs showed that: (1) Defendant furnished plaintiffs catalogs, discount sheets, samples, sales data, information on the products of competitors; (2) employed, in a recent year, and paid two missionary men who were not permitted to take orders, but who endeavored to *sell* the Missouri trade, especially large users of pipe wrenches, on defendant's products; (3) by direction of defendant, shortly after the first contract in 1919, plaintiffs placed defendant's corporate name on their (plaintiffs') office door, and in the St. Louis telephone directory and in the St. Louis postoffice directory; (4) plaintiffs, with defendant's knowledge, used a letter head bearing defendant's corporate name, and placed defendant's corporate name in the Chemical Building directory; (5) many business letters throughout plaintiffs' territory (the 13 states, including Missouri) were addressed to defendant at the Chemical Building, St. Louis; (6) defendant held a meeting of salesmen in St. Louis; (7) plaintiffs adjusted in Missouri complaints for defendant and collected accounts in Missouri; (8) many customers in Missouri, and elsewhere in the Missouri area, in ordering defendant's products, sent their orders addressed to defendant, Chemical Building, St. Louis; (9) for the three years, 1941-1943, defendant received from the activities of plaintiffs 1420 orders from Missouri customers, totaling in amount, $114,626.80 (it is not shown how many of these orders were directed to defendant at St. Louis).

The orders from Missouri for defendant's products were interstate business in character, but that alone does not render defendant immune from process in Missouri. International Harvester Co. v. Kentucky, 234 U. S. 579, 34 S. Ct. 944, 58 L. Ed. 1479. In that case the corporation (IHC) was not authorized to do business in Kentucky and claimed that it was not doing business in Kentucky in the sense to make it amenable to process. The Kentucky courts held that the corporation was ▉▉▉ amenable to the process of the State (147 Ky. 655) and that ruling was affirmed by the supreme court of the United States. The court said (234 U. S. 1. c. 585):

"Here was a continuous course of business in the solicitation of orders which were sent to another state and in response to which the machines of the harvester company were delivered within the State of Kentucky. This was a course of business, not a single transaction. The agents not only solicited such orders in Kentucky, but might there receive payment in money, checks or drafts. They might take notes of customers, which notes were made payable, and doubtless were collected, at any bank in Kentucky. This course of conduct of authorized agents within the state in our judgment constituted a doing of business there in such wise that the harvester company might be fairly said to have been there, doing business, and amenable to the process of the courts of the state."

The ruling in the International Harvester Company case and prior rulings of the kind have proceeded under the doctrine of what is termed *presence* in the state, but the recent ruling in International Shoe Co. v. State of Washington et al., 326 U. S. 310, 66 S. Ct. 154, 90 L. Ed. 110, has been considered a departure from such doctrine and a move to the principle of "fair play and substantial justice." See 34 Calif. Law Rev. 331. The article in the California Law Review is by the Honorable J. P. McBaine, professor of law, University of California, and former dean of the law school of Missouri University. Speaking of the departure from the presence doctrine, the article says: "Rejection of the 'presence' theory obviously compelled announcement of a suitable alternative and, as was to be expected, another theory was announced as furnishing a better solution of this perplexing problem. The new theory seemingly is that the demands of due process are met by the activities of the agent or agents in the forum if it is 'reasonable in the context of our federal system of government, to require the corporation to defend the particular suit which is brought therein.' "

The International Shoe Company is a shoe manufacturer incorporated under the laws of Delaware; its principal place of business is St. Louis, Missouri. The activities of the shoe company in the state of Washington are stated in the opinion as follows: "Appellant (shoe company) has no office in Washington and makes no contracts either for sale or purchase of merchandise there. It maintains no stock of merchandise in that state and makes there no deliveries of goods in

intrastate commerce. During the years from 1937 to 1940, now in question, appellant employed eleven to thirteen salesmen under direct supervision and control of sales managers located in St. Louis. These salesmen resided in Washington; their principal activities were confined to that state; and they were compensated by commissions based upon the amount of their sales. The commissions for each year totaled more than $31,000. Appellant supplies its salesmen with a line of samples, each consisting of one shoe of a pair, which they display to prospective purchasers. On occasion they rent permanent sample rooms, for exhibiting samples, in business buildings, or rent rooms in hotels or business buildings temporarily for that purpose. The cost of such rentals is reimbursed by appellant.

"The authority of the salesmen is limited to exhibiting their samples and soliciting orders from prospective buyers, at prices and on terms fixed by appellant. The salesmen transmit the orders to appellant's office in St. Louis for acceptance or rejection, and when accepted the merchandise for filling the orders is shipped f. o. b. from points outside Washington to the purchasers within the state. All the merchandise shipped into Washington is invoiced at the place of shipment from which collections are made. No salesman has authority to enter into contracts or to make collections."

It was held that the activities of the shoe company in the state of Washington were sufficient to make it amenable to process in the state to recover payments due ▇▇▇ the unemployment compensation fund. After discussing cases on the question the court said [326 U. S. l. c. 329]:

"Applying these standards, the activities carried on in behalf of appellant in the State of Washington were neither irregular nor casual. They were systematic and continuous throughout the years in question. They resulted in a large volume of interstate business, in the course of which appellant received the benefits and protection of the laws of the state, including the right to resort to the courts for the enforcement of its rights. The obligation which is here sued upon arose out of those very activities. It is evident that these operations establish sufficient contacts or ties with the state of the forum to make it reasonable and just, according to our traditional conception of *fair play and substantial justice,* to permit the state to enforce the obligations which appellant has incurred there. Hence we cannot say that the maintenance of the present suit in the State of Washington involves an unreasonable or undue procedure" (italics ours).

"Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. Pennoyer v. Neff, 95 U. S. 714, 733. But now that the capias ad respondendum has given way to personal service of summons or

other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

Speaking of the *presence* of a corporation in a state in the sense of being amenable to process the court, in the International Shoe Company case, said [326 U. S. l. c. 317] that "'presence' in the state in this sense has never been doubted when the activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given." In Prentice-Hall Corporation Service, monthly report letter No. 6, dated December 4, 1946, p. 5, the International Shoe Company case is considered and this is said: "Regular and systematic solicitation of orders in a state by the salesmen of an unqualified foreign corporation, resulting in a large volume of interstate business, constitutes sufficient activity to establish corporation's presence within the state for service of process and taxation by the state. Thus, the court severed another strand linking corporate interstate activity with immunity from state taxation."

It is true that the International Shoe Company case deals with a question on the sufficiency of service in a state tax matter while the present case deals with a question on the sufficiency of service in the matter of a breach of contract to be performed, in a large part, in the state where the plaintiffs reside. In view of the ruling in the International Shoe Company case, we are constrained to rule that, under the facts here, defendant was doing business in this state to the extent of making it amenable to the process served upon it.

The judgment of the trial court should be reversed and the cause remanded. It is so ordered. *Dalton* and *Van Osdol, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.