**Bertha JENNINGS, Appellant,**

v.

**McCALL CORPORATION, Appellee.**

**No. 17271.**

United States Court of Appeals
Eighth Circuit.

June 28, 1963.

Larry L. McMullen, Kansas City, Mo., made oral argument for the appellant and William H. Sanders, Dean F. Arnold of Caldwell, Blackwell, Sanders & Matheny, Kansas City, Mo., together with Robert E. Seiler, of Seiler, Blanchard & Van Fleet, Joplin, Mo., were with him on the brief.

James F. Duncan, Kansas City, Mo., made oral argument for the appellee and

Carl E. Enggas, of Watson, Ess, Marshall & Enggas, Kansas City, Mo., were with him on the brief.

Before VAN OOSTERHOUT and BLACKMUN, Circuit Judges, and YOUNG, District Judge.

VAN OOSTERHOUT, Circuit Judge.

Plaintiff Bertha Jennings appeals from final judgment quashing service and dismissing her complaint against the defendant McCall Corporation for want of jurisdiction. The question raised by motion in the trial court and urged here is the jurisdiction of the trial court to entertain the action, that is, (1) whether McCall, a foreign corporation, is amenable to a suit based upon diversity of citizenship in a federal court sitting in Missouri, and (2) if so, whether McCall was properly served. The motion also urged that venue, pursuant to 28 U.S.C.A. § 1391(c), was not proper. Such issue was not reached or passed upon by the trial court and because of the view we take on the jurisdiction issue we do not reach the venue problem.

The factual background is to be found in the complaint, the motion to dismiss and supporting affidavits, interrogatories and answers thereto, and other affidavits filed by the plaintiff.

McCall is a Delaware corporation engaged in the publishing business. Its principal business is the publication of McCall and Redbook Magazines. It is also engaged in the design, manufacture and sale of dress patterns. McCall is not licensed to do business in Missouri and has no executive office, manufacturing plant, warehouse, or retail or wholesale establishment in Missouri.

McCall maintains a rented office in Missouri for supervision and solicitation of magazine subscriptions over an eight-state area, including Missouri. Three Missouri residents are employed in such office. They supervise the activity of twenty-one salesmen employed to solicit subscriptions on a commission basis. The subscription business in Missouri amounted to $1,051,000 in 1961. All sub-scriptions solicited in Missouri are sent to New York for acceptance or rejection.

McCall's pattern receipts in Missouri in 1961 amounted to $290,400. Mr. Bleuher is the only person in the pattern division who engages in activities in Missouri. His territory also includes three other states. He is a salesman who attempts to secure new retail accounts that will carry McCall patterns. He also calls on existing accounts to suggest ways of improving pattern sales. Mr. Bleuher is not vested with discretion in establishing prices, terms, or conditions of contracts or orders and any contracts entered into or orders taken are subject to company approval outside the state.

During 1959, '60 and '61, in cooperation with non-owned Missouri stores, McCall participated in 61 style shows featuring McCall's patterns. McCall furnished a style commentator for such shows and in some instances furnished garments and printed programs. The sponsoring store furnished the space and the live models. McCall also provided personnel to conduct educational programs for high school teachers and students relating to styles, dressmaking, and the like.

In 1961, some $35,000 was spent in radio, TV and newspaper advertising in Missouri. McCall is listed in the Kansas City business directory and in the Kansas City phone directory, including the yellow pages thereof.

Plaintiff in her complaint asserts that McCall has wrongfully appropriated a novel method which she developed for transferring patterns onto dress material. She alleges that such appropriation constituted a breach of contract and unjust enrichment, and claims damages of $500,000.

The basis here asserted for McCall's amenability to suit is that McCall is "doing business" in the state of Missouri. The trial court in its memorandum opinion (not reported) observed that McCall's business activity in Missouri is extensive, and among other things said: "I think there would not be the slightest

doubt but that if a controversy arose between the defendant and one of its advertisers or subscribers in Missouri involving a transaction that originated or took place in Missouri, that defendant would be amenable to suit here." See Wooster v. Trimont Mfg. Co., 356 Mo. 682, 203 S.W.2d 411.

The trial court found, however, that plaintiff's cause of action did not arise out of any business conducted by the defendant in the State of Missouri, but "it pertained, according to the petition, her affidavit and that of the defendant, to a phase of its business that was entirely in the state of New York." Such finding is fully supported by the record.[1] The trial court emphasized that plaintiff's cause of action is unlike that in Wooster v. Trimont Mfg. Co., supra, since it did not arise out of a Missouri transaction. The court's opinion concludes as follows:

> "It is also my conclusion, in view of the pleadings, affidavits and answers to interrogatories, that insofar as the relationship between the plaintiff and defendant is concerned, it was not doing business within the State of Missouri, and was not subject to process within this state."

The question of whether a foreign corporation is doing business within a state is usually one of fact. Findings of fact by the trial court will not be upset unless they are without substantial evidentiary support or are induced by an erroneous view of the law.

Neither party seriously contends that jurisdiction is precluded in this case by federal due process requirements. Determination of whether the due process requirements are met is, of course, a question of federal law. The more recent federal cases have greatly relaxed the due process limitations on personal jurisdiction. McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. Compare McDonald v. Mabee, 243 U.S. 90, 37 S.Ct. 343, 61 L.Ed. 608; Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565. If a foreign corporation's business activity in a state is sufficiently extensive by federal standards, such corporation is amenable to suit in that state (as far as federal law is concerned), *even* upon a cause of action arising outside of the state. Perkins v. Benguet Consol. Min. Co., 342 U.S. 437, 446–447, 72 S.Ct. 413, 96 L.Ed. 485; Vilter Mfg. Co. v. Rolaff, 8 Cir., 110 F.2d 491, 497. McCall's contacts with the state here are clearly sufficient to meet due process tests.

Plaintiff-appellant urges that once federal standards are met nothing else is required. She contends that (1) federal law controls on the issue of amenability to suit in a federal court sitting in diversity, and alternatively, (2) even if state law controlled, Missouri has adopted the liberalized federal standards. We do not agree with either contention. We hold, as hereinafter set out in greater detail, (1) that it is Missouri's prerogative to impose further limitations, beyond those of due process, upon a foreign corporation's amenability to suit in her courts; (2) that a Missouri federal court exercising diversity jurisdiction should observe such further limitations; and (3) that the trial court did not misinterpret or misapply the Missouri law in this case.

### I.

If minimum federal due process standards are met, state law is controlling upon what constitutes doing business for the purpose of conferring personal jurisdiction in the state courts. Perkins

---

[1]. Plaintiff did inquire of Kit Mason (a McCall style commentator) at a McCall-sponsored Missouri style show about the possibility of selling an idea to McCall, but she made no disclosure at that time. She was advised that such matters were handled in New York. The disclosure was subsequently made as a result of correspondence with McCall's New York office.

Some claim is made in the brief that a continuing tort occurred in Missouri through the sale of the pirated idea in that state. Such claim does not appear to be within the scope of the pleadings.

v. Benguet Consol. Min. Co., 342 U.S. 437, 440–446, 72 S.Ct. 413, 96 L.Ed. 485; Ark-La Feed & Fertilizer Co. v. Marco Chem. Co., 8 Cir., 292 F.2d 197, 200; Pulson v. American Rolling Mill Co., 1 Cir., 170 F.2d 193, 194.

In Perkins v. Benguet Consol. Min. Co., supra, suit was brought in personam in the Ohio state court against a foreign corporation upon a cause of action arising out of the corporation's activities outside the state. The Ohio courts had dismissed the complaint for lack of jurisdiction. The Supreme Court determined that the corporation's contacts with the state were sufficient to meet due process requirements, but reversed and remanded because it found it to be unclear whether the dismissal was based upon federal due process standards or state standards. The Court, in the course of its opinion, states:

"The suggestion that federal due process *compels* the State to open its courts to such a case has no substance.

" 'Provisions for making foreign corporations subject to service in the State is a matter of legislative discretion, and a failure to provide for such service is not a denial of due process. Still less is it incumbent upon a State in furnishing such process to make the jurisdiction over the foreign corporation wide enough to include the adjudication of transitory actions not arising in the State.' Missouri P. R. Co. v. Clarendon Co., 257 U.S. 533, 535 [42 S.Ct. 210, 66 L.Ed. 354].

\* \* \* \* \* \*

"Consideration of the circumstances which, under the law of Ohio, ultimately will determine whether the courts of that State will choose to take jurisdiction over the corporation is reserved for the courts of that State. Without reaching that issue

of state policy, we conclude that, under the circumstances above recited, it would not violate federal due process for Ohio either to take or decline jurisdiction of the corporation in this proceeding." 342 U.S. at 440, 448, 72 S.Ct. at 415–416, 419–420, 96 L.Ed. 485.

In Ark-La Feed & Fertilizer Co. v. Marco Chem. Co., supra, this court was presented with a problem very similar to that here presented. We discussed the due process jurisdiction as set forth in International Shoe and pointed out that a state court is free to choose for itself the standards to be applied in determining the circumstances under which a foreign corporation would be amenable to suit, assuming of course that minimum due process requirements are met.

## II.

■ In addition to acknowledging a state's privilege to impose its own jurisdictional limitations, we indicated in the Ark-La Feed decision that a federal court sitting in diversity should follow such limitations. We thus stated the governing principle:

"Our primary concern then, is not, as Ark-La contends, whether Marco's operations in the state were within the constitutional limits announced in International Shoe, but rather has Arkansas changed its old concepts.

"We turn then to the Arkansas cases, state law as construed by its court, being held as conclusive in cases of this kind. A point on which under this record there is no dispute." 292 F.2d 197, 201.

See also Electrical Equip. Co. v. Daniel Hamm Drayage Co., 8 Cir., 217 F.2d 656, 661–662; Roark v. American Distilling Co., 8 Cir., 97 F.2d 297, 298–299; Pucci v. Blatz Brewing Co., W.D.Mo., 127 F. Supp. 747, 749–750; Doyle v. Southern Pac. Co., E.D.Mo., 87 F.Supp. 974, 975.[2]

2. The case of Long v. Victor Prods. Corp., 8 Cir., 297 F.2d 577, 580–583, is distinguishable. The trial court's dismissal of the complaint for lack of jurisdiction was affirmed in that case upon the basis of federal law. The final paragraph of

The concensus among the other Courts of Appeals appears to be the same. See Waltham Precision Instru. Co. v. McDonnell Aircraft Corp., 1 Cir., 310 F.2d 20, 22–23; Pulson v. American Rolling Mill Co., supra, 170 F.2d 193, 194; Partin v. Michaels Art Bronze Co., 3 Cir., 202 F.2d 541, 542–543; Moore-McCormack Lines, Inc. v. Bunge Corp., 4 Cir., 307 F.2d 910, 914; Westcott-Alexander, Inc. v. Dailey, 4 Cir., 264 F.2d 853, 858–859; Stanga v. McCormick Shipping Corp., 5 Cir., 268 F.2d 544, 548; Lone Star Package Car Co. v. Baltimore & O. R. Co., 5 Cir., 212 F.2d 147, 153; Roberts v. Evans Case Co., 7 Cir., 218 F.2d 893, 895; Canvas Fabricators, Inc. v. William E. Hooper & Sons, 7 Cir., 199 F.2d 485, 486; L. D. Reeder Contractors v. Higgins Industries, Inc., 9 Cir., 265 F.2d 768, 776–778; Steinway v. Majestic Amusement Co., 10 Cir., 179 F.2d 681, 682.

See also 1 Barron & Holtzoff, Federal Practice & Procedure § 179, at 696 ("the sounder view, and that supported by the greater weight of authority"). Contra, Jaftex Corp. v. Randolf-Mills, Inc., 2 Cir., 282 F.2d 508. The American Law Institute's Study of the Division of Jurisdiction between State and Federal Courts, Tentative Draft No. 1, recommends the same view by proposing its codification as 28 U.S.C. § 1303.[3]

Ultimately, appellant attempts to show that the great bulk of cases applying state law on the amenability question do so only when service is made according to state law—either in the state courts prior to removal or in the federal courts pursuant to Federal Rule 4(d) (7). Service was made, or attempted, in our present case under Federal Rule 4(d) (3). In many of the cases service is indeed made in a manner prescribed by state law, but the courts do not assign that as the reason for following the local "doing business" standards. Some cases, like Partin v. Michaels Art Bronze Co., supra, 202 F.2d at 545 (concurring opinion), are ambiguous, but others generalize in terms of "diversity cases," indicating that no distinction based upon the manner of service is intended. E. g., Stanga v. McCormick Shipping Corp., supra, 268 F.2d at 548; Lone Star Package Car Co. v. Baltimore & O. R. Co., supra, 212 F.2d at 153; Canvas Fabricators, Inc. v. William E. Hooper & Sons, supra, 199 F.2d at 486.

While it is recognized that removal cases and diversity suits where service is made under Rule 4(d) (7) do present a somewhat stronger case for applying state law to determine the question of amenability, there is no strong affirmative justification or authority why a defendant should be any more subject to suit in a diversity case merely because he is served under Rule 4(d) (3). Rule 4(d) (3) itself is not authority because it is concerned only with providing the defendant with notice that he is being sued.[4] See 1 Barron & Holtzoff, Federal Practice & Procedure § 179, at 703. The court should be mindful that the federal standard appellant urges it to adopt is the constitutional standard of due process. Nonviolation of due process is not a substantial reason for subjecting a foreign corporation to a diversity suit aris-

---

the opinion clearly shows that the court was applying the jurisdictional due process standards. Transgression of the due process standards precludes the exercise of jurisdiction whether or not state law would permit it. But it does not follow a priori that satisfaction of those standards would conclusively establish jurisdiction.

3. The tentative proposal is:
"Unless otherwise provided by law, any process issued from a district court in an action wherein jurisdiction is founded only on diversity of citizenship * * *

shall have binding effect upon any party only to the extent that the law of the State in which the district court is held prescribes in a like action brought in its courts of general jurisdiction."

4. Sufficiency of service under Rule 4(d) (3) is a federal question to be determined according to federal law, but that question concerns how service is to be made; it *assumes* that the party served is subject to suit so long as he is given adequate notice in one manner or another. See Hart & Wechsler, The Federal Courts and the Federal System 959.

ing under state law where the state court itself would not assert jurisdiction.

## III.

The foregoing analysis leads us directly to the familiar rule in this circuit that the question for review in a case involving state law is whether the trial judge has reached a permissible conclusion upon the law of his state. The power to establish state law within constitutional limits rests with the Supreme Court of the state, or, in appropriate cases, with the state legislature. We have repeatedly held that we will not attempt to outpredict or outguess the trial judge on doubtful questions with respect to the laws of his state. All this court can be expected to do is to see that the determination of the trial court is not induced by a clear misconception or misapplication of local law. National Bank of Eastern Arkansas v. General Mills, Inc., 8 Cir., 283 F.2d 574, 576–577; Homolla v. Gluck, 8 Cir., 248 F.2d 731, 734.

Plaintiff has failed to persuade us that the trial court's decision was induced by any erroneous interpretation or application of Missouri law.

A state, if it chooses so to do, can of course adopt federal due process standards for determining whether a corporation is doing business within the state. There is language in some of the Missouri cases which read in isolation would support plaintiff's contention that Missouri follows the International Shoe standards in determining the amenability of a foreign corporation to suit in the state. See Collar v. Peninsular Gas Co., Mo.Sup., 295 S.W.2d 88, 91, 93; Wooster v. Trimont Mfg. Co., 356 Mo. 682, 203 S.W.2d 411, 413–414; Hall v. Wilder Mfg. Co., 316 Mo. 812, 293 S.W. 760, 762–763, 52 A.L.R. 723; Morrow v. Caloric Appliance Corp., Mo.App., 362 S.W.2d 282, 285.

Typical of such language is that found in Collar reading as follows:

"It becomes apparent, therefore, that we must determine upon the foregoing facts, whether defendant was doing business in this state so as to become amenable to personal service which would support the rendition of a general judgment against it. At this point it may be well to state that this question is 'not one of local law or of statutory construction,' but is 'one of due process of law, under the Constitution of the United States.'" 295 S.W.2d 88, 91.

In Collar, the only activity of the foreign corporation in the state had been to commence a suit in the state court against the plaintiff. The action was for malicious prosecution of such suit. The court rejected plaintiff's contention that "our traditional conception of fair play and substantial justice" requires a finding of jurisdiction. The Court found the foreign corporation was not amenable to suit, stating:

"We observe further that a review of the cases will indicate that, in cases where jurisdiction has been assumed because the claim sued on arose from the limited activities of the foreign corporation in the state, it ordinarily appears that such activities have been a part of its regular business and somewhat continuous in nature." 295 S.W.2d 88, 93.

Subsequent events strongly indicate a local recognition that the Collar case does not rest upon unalterable constitutional principles. Thus, in 1961 the Missouri legislature passed a "one-act" statute providing:

"If a foreign corporation commits a tort, excepting libel and slander, in whole or in part in Missouri against a resident or nonresident of Missouri, such acts shall be deemed to be doing business in Missouri * * *." V.A.M.S. § 351.630(2) (Supp.1962).

In this connection, see generally Reese & Galston, Doing an Act or Causing Consequences as Bases of Judicial Jurisdiction, 44 Iowa L.Rev. 249, especially at 258–60 (1959).

In January 1963 the Missouri court in State ex rel. Clay Equip. Corp. v. Jensen, Mo.Sup., 363 S.W.2d 666, ruled

that the new provision operates prospectively only, inter alia, "because it would change *the legal effect* of past actions and would impose new duties and attach new disabilities in respect to transactions or considerations already past." 363 S.W. 2d at 672. It would thus seem that the statute effectively overrules the Collar case in spite of the latter's purported reliance upon constitutional doctrine.

In Hayman v. Southern Pacific Co., Mo.Sup., 278 S.W.2d 749, the injury did not arise out of any activity of the foreign corporation in Missouri. From the court's opinion it would appear that the activities of the defendant within the state were quite substantial and comparable to McCall's Missouri activities here. The court held no jurisdiction existed. Considerable emphasis was given to the fact that the cause of action did not arise out of activity within the state. The court cited Green v. Chicago, Burlington & Quincy R. Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916, and Missouri cases following it, and held that activity of the railroad amounted to no more than solicitation. The court, among other things, states:

"We think the ruling in the Green case is still the law of the United States Supreme Court in this kind of a case. Our decisions following it are certainly the law of this state and are applicable to the facts of this case.

\* \* \* \* \* \*

"Therefore, it seems to us that the most reasonable and satisfactory rule is to hold that a state has jurisdiction of any action against a foreign corporation which seeks to enforce an obligation or liability arising out of acts done in the state by its agents. (See Jurisdiction Over Foreign Corporations—McBaine, 34 Cal.Law Rev. 331, 334.) This rule would reasonably limit the applicability of the Green case. Both the International Shoe case and Wooster v. Trimont Mfg. Co., supra, would come within this rule. As herein-

above shown, this case would not. This above stated rule is the real basis of the laws authorizing suits in a state for acts of nonresident motorists causing injury or damage therein. See Sec. 506.210; Harris v. Bates, [364 Mo. 1023], 270 S.W. 2d 763, 767, and authorities cited; Jurisdiction Over Nonresident Motorists—Scott, 39 Harvard Law Review 563. We hold this is the proper rule for the determination of this case." 278 S.W.2d 749, 752.

Even the cases which follow the relaxed due process standards recognize that the distinction drawn in Hayman (between causes arising outside the state and those arising locally) is entitled to some weight and consideration. Thus, in Hanson v. Denckla, 357 U.S. 235, 251–252, 78 S.Ct. 1228, 2 L.Ed.2d 1283, the Court upset a Florida judgment upon the basis of due process limitations on jurisdiction. The Court stressed that the cause of action did not arise out of a local act or transaction, and carefully distinguished the landmark McGee case upon that basis.

Also, see Note, Recent Interpretations of "Doing Business" Statutes, 44 Iowa L. Rev. 345, 354, where it is said:

"The fact that the cause of action does or does not arise from activities conducted within the forum state seems to be particularly relevant when the corporation's other activities are negligible. The California courts are finding jurisdiction 'reasonable,' in absence of other factors, only where the solicitation activities are accompanied by a California cause of action. It is submitted that this is but a reiteration of the 'solicitation plus' concept in that the cause of action arising out of local activities is an additional 'plus' factor for the court to consider. The 'liberal' California court has not yet reached the point where it considers 'mere solicitation' a business activity sufficient to justify jurisdiction. The Sands case [Wiederhorn v. The

**72**

Sands, Inc., 142 F.Supp. 448 (S.D. N.Y.1956)] is an added indication that the cause of action must accompany the solicitation activities of the foreign corporation in order for the court to have jurisdiction. It should be emphasized, however, that the cause of action normally need not arise out of a foreign corporation's activities when sufficient other factors are present upon which to base jurisdiction."

A number of Missouri federal district judges have held that the Missouri courts do not go to the full limits permitted by due process in determining the amenability of foreign corporations to suit. Shannon v. Brown & Williamson Tobacco Co., W.D.Mo., 167 F.Supp. 493, 494; Pucci v. Blatz Brewing Co., W.D.Mo., 127 F.Supp. 747, 749–750; Doyle v. Southern Pacific Co., E.D.Mo., 87 F.Supp. 974, 976.

We believe that the excerpts quoted from the Hayman and the Collar cases, and such cases when read as a whole, strongly tend to indicate that the Missouri courts require something more than minimum compliance with federal due process to constitute doing business such as will make a foreign corporation amenable to state jurisdiction. Such cases and the authorities heretofore cited support the trial court's view that the origin of a cause of action within the state is an important factor to consider in determining for state jurisdictional purposes whether the foreign corporation was doing business in the state. The Hayman case, in view of its similar factual background, is direct precedent for such view. We cannot say the trial court's conclusion that McCall is not amenable to process in Missouri is induced by any misinterpretation or misapplication of Missouri law.

Additionally, the court held that the service attempted upon McCall under Federal Rule of Civil Procedure 4(d) (3) was insufficient. The service was made in Missouri on Donald R. Bleuher, sales representative for McCall. There is no proof or claim that Mr. Bleuher was an officer of McCall or that he was authorized by appointment to accept service. The contention is that he is a managing or general agent within the meaning of such term as used in the rule. The court was justified upon the record in finding as it did that Mr. Bleuher was a soliciting agent, not a managing or general agent. The evidence that supports the finding that the corporation was not engaged in business in Missouri also supports the finding that the service upon Bleuher did not meet the requirements of Rule 4 (d) (3).

The judgment is affirmed.