TWIN CITY SCENIC COMPANY,
Plaintiff,

v.

FLAMBEAU PLASTICS CORPORA-
TION, Defendant.

No. 4-59 Civ. 134.

United States District Court
D. Minnesota, Fourth Division.

Feb. 8, 1960.

David W. Lewis, of Youngquist, Comaford, Fassett & Clarkson, Minneapolis, Minn., appeared in behalf of defendant in support of said motion.

Theodore W. Thomson, of Thomson & Williams, Minneapolis, Minn., appeared in behalf of plaintiff in opposition thereto.

NORDBYE, District Judge.

The plaintiff is a Minnesota corporation in the business of constructing auditorium stage equipment. It brings this action against a Wisconsin corporation, a manufacturer of molded plastic products, for the alleged breach of contract to furnish plastic "track carriers" and a mold, all of which were to be manufactured at the defendant's plant in Baraboo, Wisconsin, and shipped to plaintiff at its Minneapolis, Minnesota, place of business. The complaint, which sounds in breach of warranty, was initially filed with a Minnesota state court and served upon Warren O. Kjeldsen, president of Warren O. Kjeldsen & Associates, Inc., at his office in St. Paul, Minnesota. A copy of that complaint was sent to defendant at its office and place of business at Baraboo, Wisconsin. The defendant has removed this action to this Court and now moves to dismiss the complaint on the grounds that it was not served with process pursuant to Minnesota law and that it does not have sufficient contacts with Minnesota to permit an action to be brought here under the due process clause of the Federal Constitution and the law of Minnesota. U.S.Const. Amend. 14.

The defendant has two soliciting agents in Minnesota. One Aerntson, of Minneapolis, is a "housewares representative" and Warren O. Kjeldsen of Warren O. Kjeldsen and Associates, Inc., is the "industrial representative"; they receive commissions on sales orders obtained for the defendant in Minnesota relative to their respective divisions. They also solicit orders for other firms, Kjeldsen being a soliciting agent for five other out-of-state manufacturers. Kjeldsen also solicits orders for the defendant in Iowa and Nebraska. Due to Aerntson's and Kjeldsen's selling activities, the defendant has done a continuous and substantial business in Minnesota within the past three years. It has shipped goods to 160 different firms located in 15 Minnesota cities. To one such firm, the sales in the past two years have amounted to $431,010. The defendant has shipped 30 per cent of its recently manufactured goods into Minnesota, the rest being sent all over the Nation. It has not been licensed to do business in Minnesota. It has no employees in Minnesota nor does it have any property or offices within the State. It has not designated anyone upon whom process may be served. On a single occasion some years ago, it exhibited its products and services in St. Paul for the benefit of the armed forces.

Orders taken by the Minnesota soliciting agents are forwarded to the defendant for acceptance or rejection. The merchandise is manufactured in Wisconsin and delivered to the purchaser "f. o. b. Baraboo, Wisconsin."

Warren O. Kjeldsen & Associates, Inc., and the defendant are unrelated and distinct corporate organizations; they have no common directors, officers, or stockholders, nor does either one exercise any control over the activities or employees of the other. Except for the listing of defendant's name in the St. Paul telephone directory, the number being for the telephone of Warren O. Kjeldsen & Associates, Inc., no public advertising is done by Kjeldsen for the defendant's benefit. Warren O. Kjeldsen & Associates, Inc., does not accept orders, approve credit, make collections, or adjust complaints for the defendant nor does it install, repair, or service the defendant's products. However, Kjeldsen and Aerntson are sometimes requested by the defendant to contact certain prospective customers. They also are expected to offer advice and suggestions relative to im-

proving the defendant's products and services when such information comes to their attention.

The transactions out of which this action arose were negotiated by Kjeldsen on behalf of the defendant. Several meetings between Kjeldsen and the plaintiff took place in this regard. After accepting the orders, the defendant produced samples of the track carriers for examination and testing by the plaintiff. When it appeared that these samples were defective, the plaintiff contacted Kjeldsen, and later the president and chief engineer of the defendant came to Minneapolis to discuss the situation with the plaintiff. After this meeting, the defendant made further designs of the track carriers and production and shipping were resumed. There being further evidence of difficulty with the product, Kjeldsen was asked to correct the defects. He suggested to the defendant that a certain mold be reformed and that some of the finished carriers be further treated by boiling. The plaintiff asserts that Kjeldsen attempted to "work out an adjustment of the trouble" on behalf of the defendant. But how this was done or what the details were of such negotiations is not disclosed. The president of the plaintiff further states that Kjeldsen "frequently endeavors to adjust claims between his customers and the defendant." No information is offered as to the source of this information or the nature of such adjustment negotiations.

■ The first question to be decided is whether the defendant is amenable to service of process within the territory of this forum; that is, will the maintenance of this action in this State deprive it of property without due process of law. Whether the foreign corporation has contacts with the forum state such that it would not be unfair or unreasonable to require it to defend here the action is the proper criterion in this regard. International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. It seems clear that the defendant does have the requisite contacts with Minnesota to constitutionally enforce its defense of this action. The transactions out of which the action arises occasioned substantial contacts with this State. The negotiations for the agreements were carried on here with the defendant's soliciting agent; the president and chief engineer came to Minnesota to negotiate design and production adjustments; the goods were shipped to Minnesota with the parties' knowledge that they would be used here; they were so used and the damages, as alleged, were sustained in Minnesota, and the complaints were registered with the Minnesota representatives of the defendant. Moreover, the defendant does not deny that, due to the local activities of its soliciting agents, it does a regular and substantial business in Minnesota. That fact has been amply established. This is not to say that any one of the above-mentioned factors is necessarily conclusive on the issue, but taken together, they establish that the defendant is jurisdictionally present in Minnesota and may be sued in this State. International Shoe Co. v. State of Washington, supra; Krnach v. Electro Lift, Inc., D.C.N.D.Ohio 1952, 13 F.R.D. 131. Forcing the defendant to defend this action here should not cause it any undue burden or hardship. Although some of the witnesses may reside in Wisconsin, there are those in Minnesota who are equally indispensable. No reason has been advanced herein why the defendant should have any cause to complain if it is required to meet this claim in this forum. Although the facts in International Shoe Co. are slightly different from those in the case at bar, the factors deemed important in that decision are present here. Accordingly, that case is followed.

A case in point is Krnach v. Electro Lift, Inc., supra. There, a foreign corporation sold its products in Cleveland through its "manufacturer's agent", one Rice, who also represented two other manufacturing concerns. Rice, with the assistance of two employees, solicited orders, upon which he received commissions, in an exclusive territory, and often

investigated overdue bills and customer complaints and determined whether defective machinery warranted further processing by his principal. The foreign corporation was listed in the Cleveland telephone directories under Rice's telephone number, although it did not pay for this service or for any other of Rice's expenses. The president and chief engineer of the foreign corporation had visited Cleveland from time to time to confer with Rice. The foreign corporation did an annual business in Ohio amounting to $200,000. The court there held that service of process on Rice was sufficient in a personal injury action against the foreign corporation grounded on an alleged defect in the construction of a machine. The facts in that case are strikingly similar to those in the instant case and its conclusion is persuasive here.

Also pertinent is Riverbank Laboratories v. Hardwood Products Corp., 1956, 350 U.S. 1003, 76 S.Ct. 648, 100 L.Ed. 866, reversing 7 Cir., 1955, 220 F.2d 465. There, one Heidemann had been soliciting sales orders for many years in Chicago for the defendant, a corporation manufacturing sound insulating doors in Wisconsin. The corporate name was in building and telephone directories in Chicago and on the door of Heidemann's office. Heidemann had consulted with architectural and engineering firms in Chicago as to the technical requirements of particular jobs and had occasionally investigated complaints in his area and advised his principal, the defendant, of defects in its products and remedies therefor. The only other significant contact the defendant had with Illinois was that some cheap "bottom closers" for the doors had been manufactured there. It was held there in an unfair competition action commenced by serving the summons and complaint on Heidemann that "there was proper service upon the defendant."

■ The next question presented is whether the defendant herein can be sued in Minnesota pursuant to Minnesota law. Defendant relies upon Hilmes v. Marlin

Firearms Co., D.C.D.Minn.1955, 136 F. Supp. 307. In that case, however, while there was solicitation of business in Minnesota for the defendant by an independent soliciting agent, the sole basis for bringing the defendant into the State was mere solicitation. The orders taken in Minnesota aggregated from $15,000 to $25,000 per year. The action, however, related to a shotgun manufactured by the defendant. It was an old model and had been owned by several parties before it came into plaintiff's possession. The record did not disclose when the gun was sold, nor did it establish that the gun had ever been sold in or to a resident of Minnesota. Clearly, therefore, the showing in the Hilmes case is distinguishable from the case at bar.

The case at bar, however, is not distinguishable from Hartmon v. National Heater Co., 1953, 240 Minn. 264, 60 N. W.2d 804. That case was a wrongful death action and service of process was made upon one Bayers, the Minnesota representative for the foreign corporation, which was a manufacturer of conversion gas burners. Bayers solicited sales for defendant as well as for other firms. The Minnesota Supreme Court held that the defendant was amenable to suit in this State, stating (at page 270, of 240 Minn., at page 809, of 60 N.W. 2d),

"* * * He [Bayers] was held out to defendant's customers as its Minnesota representative and was so regarded by them. Bayers systematically and continuously solicited the sale of defendant's products within the state of Minnesota. He was the source of information regarding defendant's products within the state and, upon request, he was able to obtain technical help for customers from defendant. Bayers had also investigated complaints— including the one in the instant case —, advised dissatisfied customers as to possible measures to improve the operation of defendant's heating units, and sent the information obtained to defendant."

In affirming a judgment for the plaintiff, the Minnesota Supreme Court held that the defendant therein was amenable to suit in Minnesota. The Minnesota cases conclusively indicate that this action could have been maintainable in the Minnesota state courts, and consequently can be brought here.

The defendant also contends that the action should be dismissed here on the ground that it was not properly served with process. Inasmuch as this action was instituted in the state courts of Minnesota, the service herein must be tested by Minnesota law. Rule 4.03 of the Minnesota Rules of Civil Procedure states,

> "Service of summons within the state shall be made as follows: * *
>
> "(c) Upon a Corporation.
>
> "Upon a domestic or foreign corporation, by delivering a copy to an officer or managing agent, or to any other agent authorized expressly or impliedly or designated by statute to receive service of summons, * * *."

The question now to be answered is whether Kjeldsen is a "managing agent" within the meaning of the rule partially quoted above.

It has been stated that whatever activities make a foreign corporation "present" for jurisdictional purposes, the agent in charge of those activities is the "managing agent" *pro hac vice*. See Bomze v. Nardis Sportswear, Inc., 2 Cir., 1948, 165 F.2d 33. But that proposition need not be examined here, for even under the strictest construction courts have given the term "managing agent", Kjeldsen has such a relationship to the defendant and he can accept its process. Under this latter interpretation, a managing agent is one invested by the corporation with the general control, authority, judgment and discretion in its business or affairs, whether it be everywhere or in a particular branch or district. Carroll v. Wisconsin Power & Light Co., 1956, 273 Wis. 490, 79 N.W.

2d 1. To say that Kjeldsen is a mere soliciting agent lends little assistance to the solution of this problem. It is the primary function of manufacturing corporations to sell their products or at least create conditions favorable to the making of future sales. Accordingly, it is also the function of their agents, whether they be in a superior or inferior capacity, to labor toward that end. See Frene v. Louisville Cement Co., 1943, 77 U.S.App.D.C. 129, 134 F.2d 511, 146 A.L.R. 926. At any rate, Kjeldsen is in a position to command and supervise the defendant's entire industrial business in a large area to which he effectively contributed and continued to its present substantial size. He is the sole contact and liaison between the defendant and its Minnesota customers to whom he imparts information and attends to their difficulties on behalf of the defendant. The defendant acts upon his advice and recommendations relating to production. It seems clear that in dealing with corporate matters, Kjeldsen does not act in an inferior capacity under close supervision or direction but can himself exercise judgment and discretion in promoting the defendant's best interests. He effectively controls and manages the defendant's substantial Minnesota business. His duties and his activities are broad and those, not his title, must control. Service of process upon Kjeldsen was sufficient service upon the defendant. For cases reaching the same conclusion in similar factual situations, see Riverbank Laboratories v. Hardwood Products Corp., 1956, 350 U.S. 1003, 76 S.Ct. 648, 100 L.Ed. 866 reversing 7 Cir., 1955, 220 F.2d 465; Latimer v. S/A Industrias Reunidas F. Matarazzo, 2 Cir., 1949, 175 F.2d 184, certiorari denied, 1949, 338 U.S. 867, 70 S.Ct. 141, 94 L.Ed. 531; Bomze v. Nardis Sportswear, Inc., 2 Cir., 1949, 165 F.2d 33; McClendon v. Curtis Bay Towing Co., D.C.S.D.N.Y.1955, 130 F.Supp. 455; Satterfield v. Lehigh Valley Ry. Co., D.C.S.D.N.Y.1955, 128 F. Supp. 669; Krnach v. Electro Lift, Inc., D.C.N.D.Ohio 1952, 13 F.R.D. 131; but

cf., Consumers Services, Inc. v. Cleaver-Brooks Co., D.C.D.Minn.1954, 117 F. Supp. 585.

The defendant's motion to dismiss should be, and hereby is, in all respects denied. It is so ordered. An exception is reserved.