Ray McNEELY et ux., Plaintiffs,

v.

CLAYTON AND LAMBERT MANUFACTURING CO., a Delaware corporation, Defendant.

Bernard ULRICH and Ann Ulrich, Plaintiffs,

v.

LINDSAY BROS. CO., a Minnesota corporation and Clayton and Lambert Manufacturing Co., a Delaware corporation, Defendants.

Nos. 3–68 Civ. 159, 3–67 Civ. 72.

United States District Court
D. Minnesota,
Third Division.

Nov. 8, 1968.

234

Cochrane, Thomson & Bresnahan, by John A. Cochrane, St. Paul, Minn., for plaintiffs.

Faegre & Benson, by W. James Fitzmaurice, Minneapolis, Minn., for defendant Clayton & Lambert.

Johnson & Sands, by Maurice C. Lizee, Minneapolis, Minn., for defendant Lindsay Bros. Co.

NEVILLE, District Judge.

In two different actions, the defendant Clayton and Lambert Manufacturing Company (Clayton & Lambert) has moved to quash service of process upon it and to dismiss the complaints for want of personal jurisdiction. In McNeely v. Clayton & Lambert Mfg. Co., 3–68 Civ. 159, defendant alternatively has moved, if the motion to dismiss not be granted, to transfer the venue of that case pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Western District of Wisconsin. Jurisdiction over the subject matter as to both cases is based on diversity of citizenship and the requisite jurisdictional amount.

The dispute in *McNeely* arises out of the purchase by plaintiff McNeely in June 1965 of a Herd King Silo. McNeely is a resident of Wisconsin and the silo was erected there. The silo was purchased in Wisconsin from a distributor, Lindsay Bros. Company *of Milwaukee*, a Wisconsin corporation with its principal place of business at Milwaukee. The silo was manufactured by defendant Clayton & Lambert, a Delaware corporation with its principal place of business at Buckner, Kentucky and sold by it to Lindsay Bros. Company *of Milwaukee*, Wisconsin. The complaint charges, among other things, negligence in the manufacture of the silo, misrepresentation and the breach of various warranties. Service of process was made upon Hugh Lindsay, president of Lindsay Bros. Company *of Minnesota*, a Minnesota corporation with its principal place of business in Minneapolis, Minnesota. This latter corporation is entirely distinct as a corporate entity from Lindsay Bros. Company *of Milwaukee*, Wisconsin.

Pending in this court also is Ulrich v. Lindsay Bros. Co., No. 3–67 Civ. 72, transferred to this particular judge for the limited purpose of ruling on the present jurisdictional motion. *Ulrich* involves a similar complaint. However in *Ulrich* the silo in question was purchased from Lindsay Bros. Co. *of Minnesota*. Service of process was made initially on Mr. Johndrea, vice-president of Lindsay Bros. *of Minnesota*. Service of process was then made upon the secretary of state of the State of Minnesota pursuant to Minn.Stat. § 303.13 (1967 Supp.), a "long arm" statute. Subsequently, plaintiffs Ulrich also served Clayton & Lambert in Louisville, Kentucky pursuant to Minn.Stat. § 543.19 (1967 Supp.) and upon authorization of this court permitting service to be made by some one other than the U. S. Marshal. The court's order stated, however, that such service was "without prejudice to any claims of defendants to jurisdiction or validity of service."

Plaintiffs in both cases argue that the earlier trial by this court of a case similar to both of these, i. e., Brown v. Lindsay Bros. Co. and Clayton & Lambert Mfg. Co., 3–67 Civ. 94, conclusively shows that Lindsay Bros. *of Minnesota* was the "managing agent" of Clayton & Lambert within Minnesota for the purposes of service of process.

■ The court is willing to take judicial notice of the files and records in the *Brown* case.[1] Yet, contrary to plaintiffs' contention, the *Brown* case in the court's opinion does not establish for purposes of these motions that Lindsay Bros. of Minnesota was the "managing agent" of Clayton and Lambert. The plaintiffs bear the burden of proof as to jurisdictional facts and they have not reproduced or pointed out any portion of the transcript which would indicate that Lindsay Bros. was such a "managing agent."

Instead, pursuant to Rule 43(e) of the Federal Rules of Civil Procedure, the court will base its decision on this motion on the various depositions taken in *Ulrich* and on the affidavits submitted in *McNeely*.[2]

■ The first question presented is whether Clayton & Lambert is subject to suit in Minnesota at all by anyone, residents or non-residents of Minnesota. Effective service of process is first conditioned on the power of the court properly to acquire personal jurisdiction over a defendant.

■ In deciding jurisdictional questions, a federal court in a diversity case must look to state law to determine a foreign corporation's amenability to suit within the state and thus in federal courts. A state may choose not to exercise its full constitutional power in this area and it may impose limitations beyond those of due process.[3] A federal court in a diversity case must abide these limitations. Thus, in a diversity case, if a foreign corporation is not amenable to suit in the state court, it is not amenable to suit in a federal court sitting within the state.[4] This problem was discussed in some length in Arrowsmith v. United Press International, 320 F.2d 219, 226, (2nd Cir. 1963):

> "[W]e find no federal policy that should lead federal courts in diversity cases to override valid state laws as to the subjection of foreign corporations to suit, in the absence of direction by federal statute or rule. State statutes determining what foreign corporations may be sued, for what, and by whom, are not mere whimsy; like most legislation they represent a balancing of various considerations—for example, affording a forum for wrongs connected with the state and conveniencing resident plaintiffs, while avoiding the discouragement of activity within the state by foreign corporations."

The court's first inquiry thus is whether Clayton & Lambert was amenable to suit in the state courts of Minnesota either by plaintiffs Ulrich or McNeely or both. This is a question to begin with of personal jurisdiction, not the manner of service or the question of the person served.[5]

■ It long has been the law of Minnesota that a foreign corporation conducting a regular and systematic solicitation of business within Minnesota resulting in a continuous flow of products into the State is "present" and doing business within the State so as to be amenable to

1. Meredith v. Van Oosterhout, 286 F.2d 216 (8th Cir. 1960); Kern v. Tri-State Ins. Co., 386 F.2d 754 (8th Cir. 1967).

2. Gibbs v. Buck, 307 U.S. 66, 71–72, 59 S.Ct. 725, 83 L.Ed. 1111 (1939); Consumers Services, Inc. v. Cleaver-Brooks Co., 117 F.Supp. 585 (D.Minn.1954); and Kelly v. United States Steel Corp., 170 F.Supp. 649 (W.D.Pa.1959). Compare, Broadstone Realty Corp. v. Evans, 213 F.Supp. 261, 266–267 (S.D.N.Y.1962) with Urquhart v. American-La France Foamite Corp., 79 U.S.App.D.C. 219, 144 F.2d 542, cert. denied, 323 U.S. 783, 65 S.Ct. 273, 89 L.Ed. 625 (1944).

3. Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); Ark-La Feed and Fertilizer Co. v. Marco Chemical Co., 292 F.2d 197 (8th Cir. 1961).

4. Jennings v. McCall Corp., 320 F.2d 64, 67 (8th Cir. 1963); Aftanase v. Economy Baler Co., 343 F.2d 187, 190 (8th Cir. 1965). See also, Arrowsmith v. United Press International, 320 F.2d 219, 6 A.L.R.3d 1072 (2nd Cir. 1963).

5. See, Note, Corporate Amenability to Process in the Federal Courts: State or Federal Jurisdictional Standards?, 48 Minn.L.Rev. 1131 (1964).

suit by those who have come in contact with it or have done business with it.[6]

Prior to 1957, Minnesota did not have a general jurisdictional statute exclusively pertaining to subjecting foreign corporations to suit as defendants.[7] Service of process was effectuated under Minn.Stat. § 543.08 and its predecessors providing for service on a foreign corporation by "delivering a copy [of the summons and complaint] to any of its officers or agents within the state." Minnesota courts consistently held that for such service to be valid the foreign corporation had to be amenable to in personam jurisdiction, i. e., the foreign corporation had to be "present" and doing business within the state.[8] Minn.Stat. § 543.08 has now been replaced by Rule 4.03(c) of the Minnesota Rules of Civil Procedure—District Courts, about which more will be said later herein. In 1957,

no doubt in response to McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the Minnesota Legislature enacted Minn. Stat. § 303.13 subd. 1(3) (1967 Supp.). This statute provides for service on a foreign corporation by service on the secretary of state of the State of Minnesota in circumstances where the "foreign corporation makes a contract with a resident of Minnesota" or "commits a tort * * * against a resident of Minnesota." The Minnesota Supreme Court in construing this statute has indicated it will assert maximum jurisdiction consistent with the due process clause.[9] It is important to note that Minn.Stat. § 303.13 cannot be classified as the exclusive jurisdictional provision as Minnesota courts had for years been sustaining jurisdiction where the foreign corporation was continuously and systematically

6. Strom v. Montana Central Ry. Co., 81 Minn. 346, 350, 84 N.W. 46, 47 (1900) ("* * * if a foreign corporation comes within this state, and enters into contracts or does acts whereby a cause of action accrues to another, it ought to answer therefor in our courts * * *."); Kendall v. Orange Judd Co., 118 Minn. 1, 13, 136 N.W. 291, 295 (1912) ("* * * foreign corporations * * * must, if they enter this state and do business therein, comply with the laws thereof and submit to the process of its courts."); Atkinson v. United States Operating Co., 129 Minn. 232, 235–236, 152 N.W. 410, 411, L.R.A.1916E, 241 (1915) ("any transactions which bring the corporation within a state render it subject to the jurisdiction of the courts of that state * * *."); Erving v. Chicago & N. W. Ry. Co., 171 Minn. 87, 92, 214 N.W. 12, 14 (1927) ("a foreign corporation is doing business in a state, when its business is such in character and extent as to warrant the inference that the corporation has subjected itself to the jurisdiction and laws of the state. * * *"); Dahl v. Collette, 202 Minn. 544, 549, 551, 279 N.W. 561, 566 (1938) ("a corporation may be found to be doing business within the state despite the circumstance that no agent is there discoverable * * * solicitation in regular course of business, together with acceptance and performance of the contract within the state * * * [o]r, if the solicitation results in a continuous flow of goods into the

state and if payment therefor is made within the state, these factors altogether support the inference that the corporation is presently doing business."); Schilling v. Roux Distributing Co., 240 Minn. 71, 85–86, 59 N.W.2d 907, 915 (1953) ("it may be that mere solicitation is now enough when carried on systematically and continuously * * * to subject the corporation to a suit * * * [but certainly] the sale of goods and the continuous and systematic shipment of such goods into this state is, and ought to be recognized as, the doing of business."). See also, Hartmon v. National Heater Co., 240 Minn. 264, 60 N.W.2d 804 (1953).

7. Today Minnesota does have such a jurisdictional statute. See, Minn.Stat. § 543.19 (1967 Supp.).

8. Dahl v. Collette, 202 Minn. 544, 279 N. W. 561 (1928) and other cases cited earlier.

9. Beck v. Spindler, 256 Minn. 543, 99 N. W.2d 670 (1959); Atkins v. Jones & Laughlin Steel Corp., 258 Minn. 571, 104 N.W.2d 888 (1960); Dahlberg Co. v. Western Hearing Aid Center, Ltd., 259 Minn. 330, 107 N.W.2d 381, cert. denied, 366 U.S. 961, 81 S.Ct. 1921, 6 L.Ed.2d 1253 (1961); Adamek v. M'chigan Door Co., 260 Minn. 54, 108 N.W.2d 607 (1961); Ehlers v. United States Heating and Cooling Mfg. Co., 267 Minn. 56, 124 N.W.2d 824 (1963).

engaged in business activities within the State. The evident purpose of § 303.13 subd. 1(3) was to assert jurisdiction and specify the manner of service in the limited number of instances where the foreign corporation had limited its activities to a so-called "single act" involving by its terms a resident of Minnesota. In the court's view, however, it does not need to reach the question whether jurisdiction could have been asserted under § 303.13 by plaintiffs here who are Wisconsin residents.

■ The amenability to suit under state law is the threshold question to be decided by a federal court in a diversity suit. An attempt by the state must not violate the due process clause of the Fourteenth Amendment.[10] Three landmark decisions guide our way here. The first is International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) where the court emphasized that due process requires only " * * * certain minimum contacts" to subject a foreign corporation to suit " * * * such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" The second case, McGee v. International Life Ins. Co., 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed. 2d 223 (1957), recognized the legitimate interest a state might have in providing a local forum to its residents injured or damaged by a foreign corporation even though the foreign corporation had committed only a "single act" within the state. The Court said "it is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State." The third case, Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), focused on the territorial limits to which a state may go in asserting in personam jurisdiction over a foreign corporation. Here the Court stated that " * * * it is essential in each case that there be some act by which the defendant purposefully avails

itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law." In addition to these Supreme Court decisions, the Eighth Circuit has examined this question and has laid down the following guidelines: "the quantity of the contacts, the nature and quality of the contacts, and the source and connection of the cause of action with those contacts" and to some extent the "interest of the forum state and convenience." Aftanase v. Economy Baler Co., 343 F.2d 187, 197 (8th Cir. 1965).

■ Every case concerning in personam jurisdiction and its due process limitations depends upon its own peculiar facts. Jennings v. McCall Corp., 320 F.2d 64, 67 (8th Cir. 1963). The court is convinced that Clayton & Lambert was amenable to suit in Minnesota by anyone doing business with it in Minnesota or buying its product within Minnesota or through its Minnesota representative because of Clayton & Lambert's continuous and systematic business activities within the state. Plaintiffs Ulrich qualify as such in this case. Admittedly, Clayton & Lambert is not licensed or qualified as a foreign corporation to do business within Minnesota under Minn.Stat. § 303.03, nor does it have any area managers or other personnel residing or stationed in Minnesota. It owns no substantial property in Minnesota and does not maintain a bank account. Its financial activities are carried on outside the State. Nonetheless, Clayton & Lambert was actively engaged in business activities in Minnesota so as to be amenable to suit within the State without any constitutional violation of due process. The depositions of L. J. Rautio, president of Clayton & Lambert and of James Francis, Sales Manager, show that Clayton & Lambert has been selling grain bins and silos and some accessory equipment for farm buildings on a continuous basis in Minnesota since 1961. Their total volume of sales of silos and grain bins in Minnesota has

10. Pulson v. American Rolling Mill Co., 170 F.2d 193 (1st Cir. 1948); Aftanase

v. Economy Baler Co., 343 F.2d 187, 192 (8th Cir. 1965).

averaged about $200,000 each year based on the sale of approximately 100 such silos and bins. While Clayton & Lambert has an area manager in Wisconsin, they have no salaried employees within Minnesota. Instead, their sales are made to and handled thereafter through Lindsay Bros. of Minnesota, the exclusive distributor for Clayton & Lambert in Minnesota and a part of Wisconsin. The sales to Lindsay Bros. were on an open account, but the silos themselves were generally shipped directly to the site. Other farm equipment is also sold in Minnesota some of which is stored in a warehouse maintained by Lindsay Bros. This business has totaled over one million dollars. Clayton & Lambert personnel have visited Minnesota several times to solicit purchases of the silos and Clayton & Lambert has engaged in a program of cooperative advertising with Lindsay Bros. Clayton & Lambert also has conducted a sales school for Lindsay Bros. personnel. Clayton & Lambert followed up the sales of the silos by sending various literature directly to the new owners including a warranty, erection instructions, operating instructions and a booklet. Finally, Clayton & Lambert personnel dealt directly with its customers including plaintiffs Ulrich jointly with representatives of Lindsay Bros. of Minnesota on several occasions involving the inspection and replacement of defective parts.

■ This history of continuous and systematic business activity on the part of Clayton & Lambert together with its direct solicitation and participation in the sales of silos satisfies both state and federal requirements. Clayton & Lambert has purposefully availed itself of the benefits and opportunities of transacting business in Minnesota. Clayton & Lambert could reasonably foresee that such business activity would have consequences in Minnesota requiring it to defend, if need be, any lawsuit initiated against it in Minnesota on account of such activities. Certainly it is not unfair to the defendant to expect it to answer suits resulting from the solicitation and sales of its silos. On the facts presented, the court is satisfied that Clayton & Lambert was at the time here involved, amenable to suit in Minnesota.[11]

■ The second question presented here, having determined that Clayton & Lambert is amenable to service and subject to suit in Minnesota, is whether the plaintiffs in either of the cases now pending, served the proper person. Both plaintiffs served summons and complaint on Lindsay Bros. *of Minnesota* and claims thereby to have effected service on an agent of Clayton & Lambert. Neither plaintiff has served any officer or employee of Clayton & Lambert while found in Minnesota, nor was there any appointed agent in Minnesota who could be served. Before a court may assume personal jurisdiction over the defendant, there must be proper and sufficient service of process. The question of sufficiency of service is determined by federal law.[12]

In both *Ulrich* and *McNeely* plaintiffs claim that Lindsay Bros. *of Minnesota* was the "managing agent" of Clayton & Lambert and that service on Lindsay Bros. was proper under Rule 4(d) (3) of the Federal Rules of Civil Procedure. Rule 4(d) (3) provides for service upon a foreign corporation by service on "an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process * * *" It is not contended that Lindsay Bros., or the officers there-

11. Hartmon v. National Heater Co., 240 Minn. 264, 271, 60 N.W.2d 804 (1953); and Twin City Scenic Co. v. Flambeau Plastics Corp., 182 F.Supp. 743 (D.Minn. 1960).

12. Jennings v. McCall Corp., 320 F.2d 64, 69 n. 4 (8th Cir. 1963). See, National Equipment Rental, Ltd. v. Szukhent, 375 U.S. 311, 316, 333, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964); 1 Barron & Holtzoff, Federal Practice § 179 at 701 (Wright ed. 1960).

of, were agents authorized by appointment or by law.

■ The general federal rule of whether an independent distributor—which Lindsay Bros. is as the evidence indicates—is the managing agent of the manufacturer is stated in 2 Moore, Federal Practice ¶ 4.22[2] at 1127–28:

" * * * Ordinarily an independent distributor or sales organization is not considered the agent for the acceptance of service upon the organization in whose products it deals, unless it it shown that the production organization so controls the distribution or sales organization that it is proper to consider it the agent of the production organization. (footnotes omitted)

The Minnesota Federal District Courts have adhered to this general rule.[13]

■ The facts in *Ulrich* and *McNeely* indicate that Lindsay Bros. was not the managing or general agent of Clayton & Lambert under the Federal Rules of Civil Procedure. While Lindsay Bros. was the exclusive distributor in Minnesota and Western Wisconsin for several lines of farm equipment, there is a lack of showing that Clayton & Lambert so dominated or controlled the marketing and other business activities of Lindsay Bros. to make Lindsay Bros. *of Minnesota* its managing agent. As noted above, sales to Lindsay Bros. were made on an open account; and, while the evidence indicates that both Lindsay Bros. and Clayton & Lambert participated jointly in the sales of the silos, appropriate corporate formalities were always observed. The distinction between an agent and managing agent is, of course, one of degree. The testimony in the various depositions indicates an agency relationship on perhaps several piecemeal transactions involving the Herd King Silo, including the sale to plaintiffs Ulrich, but it falls short of demonstrating that Lindsay Bros. was authorized generally to conduct a "series of transactions involving a continuity of service" on behalf of Clayton & Lambert.[14]

It has been urged by plaintiffs that if Clayton & Lambert is doing business within Minnesota, then the person in charge of such activities is a managing agent.[15] Accepting this as a correct statement of the law, the facts show that James Francis, Sales Manager of Clayton & Lambert, was the person most actively in charge of Clayton & Lambert's business activities in Minnesota when the cause of action arose. He was in Minnesota or Wisconsin frequently on business.

This leaves for resolution the question of whether service of process was effectuated under Rule 4(d) (7) of the Federal Rules of Civil Procedure providing for service of process in a "manner prescribed by the law of the state in which the district court is held * * *." The Federal Rules authorize, therefore, service of process in the manner prescribed by the laws of the State of Minnesota. In *McNeely* plaintiffs have

13. Consumers Services, Inc. v. Cleaver-Brooks Co., 117 F.Supp. 585 (D.Minn. 1954); and Nordgren v. Evis-Northwest, Division of Northwest Industrial Service Corp., 15 F.R.D. 453 (D.Minn.1954). But see, Twin City Scenic Co. v. Flambeau Plastics Corp., 182 F.Supp. 743 (D. Minn.1960) (application of state law). This generally has been the view in other Districts. Compare, Bach v. Friden Calculating Mach. Co., 167 F.2d 679 (6th Cir. 1948) (service of process sustained under both federal and state law where manufacturer dominated and controlled activities of independent contractor) with, Kelly v. United States Steel Corp., 170 F.Supp. 649 (W.D.Pa.1959) (service of process quashed where manufacturer did not so control distributor).

14. See, Restatement, Agency §§ 1 and 3. See also, Marlow v. Hinman Milking Mach. Co., 7 F.R.D. 751, 756 (D.Minn. 1947); and Myers Motors, Inc., v. Kaiser-Frazer Sales Corp., 80 F.Supp. 18, 21 (D.Minn.1948).

15. Lone Star Package Car Co. v. Baltimore & O. R. Co., 212 F.2d 147, 152 (5th Cir. 1954); and Goldberg v. Mutual Readers League, Inc., 195 F.Supp. 778, 783 (E.D.Pa.1961).

relied on its service of process on the president of Lindsay Bros. In *Ulrich* plaintiffs have proceeded by several methods.

 In *Ulrich* the service of process on the president of Clayton & Lambert in Louisville, Kentucky pursuant to Minn.Stat. § 543.19 (1967 Supp.) was ineffectual. That statute became effective May 15, 1967. The cause of action in *Ulrich* arose either at the time the silo was purchased in 1965 or when the plaintiffs allegedly encountered difficulties with it in 1966. In either case, the cause of action arose before the effective date of the statute. Indeed, the complaint was filed March 10, 1967. Since § 543.19 is not to be applied retroactively, service under this statute must fail.[16]

Plaintiffs Ulrich have attempted also to effect service of process under Minn. Stat. § 303.13 subd. 1(3), mentioned earlier, which provides for substituted service on the secretary of state where the "foreign corporation makes a contract with a resident of Minnesota" or "commits a tort * * * against a resident of Minnesota." Generally, this statute has been restricted to resident plaintiffs.[17] In three instances, however, each involving negligence and breach of warranty, a non-resident plaintiff has been permitted to proceed under § 303.13.[18] In view of the result reached below, it is unnecessary at this time to decide whether this case falls within the exceptions carved out by *Ewing* and *Williams* cited in the footnote or whether the statute constitutionally can be restricted only to residents of Minnesota.

 As to plaintiffs Ulrich's service on Mr. Johndrea, vice-president of Lindsay Bros. *of Minnesota*, the court is of the view this service was effective. Rule 4.03(c) of the Minnesota Rules of Civil Procedure—District Courts contains the general rule for service of process on foreign corporations. Rule 4.03(c) provides that service of process may be made upon " * * * [a] foreign corporation, by delivering a copy to an officer or managing agent, or to any other agent authorized expressly or impliedly * * * to receive service of summons." This rule necessitates a finding that in *Ulrich* and for purposes of service Lindsay Bros. *of Minnesota* was Clayton & Lambert's agent in Minnesota and was expressly or impliedly authorized to accept service of process. Rule 4.03(c) differs from Rule 4(d) (3) of the Federal Rules in that Rule 4.03(c) sanctions service of process whenever an agency relationship may be found to exist and where it may be said that such agent was authorized to receive service. The Minnesota Rule is not as restrictive as the Federal Rule.

 Minnesota follows the Restatement, Agency § 1 and defines agency as "the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."[19] Minnesota law requires an actual agency for service of process purposes and such an agency relationship cannot be created by estoppel or implication of law.[20] On the other hand, an agency relationship may be implied from the facts presented.

16. See Majerus v. Walk, 275 F.Supp. 952 (D.Minn.1967).

17. Flemmen v. Midland Overseas Shipping Corp., 254 F.Supp. 592 (D.Minn.1966).

18. Ewing v. Lockheed Aircraft Corp., 202 F.Supp. 216 (D.Minn.1962) ; Williams v. Connolly, 227 F.Supp. 539 (D.Minn. 1964) ; and Buri v. Olsen, No. 4–66 Civ. 99 (D.Minn.1968) (third party suit). See also, Szantay v. Beech Aircraft Corp., 349 F.2d 60 (4th Cir. 1965).

19. Lee v. Peoples Co-op Sales Agency, Inc., 201 Minn. 266, 268, 276 N.W. 214, 216 (1937) ; Derrick v. Drolson Co., Inc., 244 Minn. 144, 148, 69 N.W.2d 124 (1955).

20. Wold v. J. B. Colt Co., 102 Minn. 386, 114 N.W. 243 (1907) ; Derrick v. Drolson Co., Inc., supra, 244 Minn. at 148 n. 2, 69 N.W.2d 124; Kopio's, Inc. v. Bridgeman Creameries, Inc., 248 Minn. 348, 79 N.W.2d 921 (1956).

21. Derrick v. Drolson Co., Inc., supra, 244 Minn. at 148, 69 N.W.2d 124.

Thus, an independent contractor—and logically an independent distributor—may be an agent for purposes of service of process.[21] In Derrick v. Drolson Co., Inc., 244 Minn. 144, 152–153, 69 N.W.2d 124, 130 (1955), the Minnesota Supreme Court outlined the scope of Rule 4.03(c):

"According to the notes of the Advisory Committee, Rule 4.03(c) was intended to 'permit service upon agents so authorized under common law principles of agency.' It 'amends the present statutory law by increasing the scope of persons to be served in the case of a domestic corporation,' and the phrase 'is broader than a "managing agent",' which has received a rather settled definition.' It is well established that implied authority is actual authority circumstantially proved and is dependent upon the intention of the parties. It includes such powers as are directly connected with and essential to the business expressly entrusted to the agent. Apparent or ostensible authority, on the other hand, is not actual authority but is that which the principal holds the agent out as possessing or knowingly permits the agent to assume."

Of course, certain limitations are necessary. "The authority of an agent is generally held to be coextensive with the property or business entrusted to his care." [22]

In the Ulrich case, the determination of an agency relationship together with an authority to receive service of process involves a factual determination based on the records, depositions and affidavits submitted. But "the intention of the parties or the manifestations of consent * * * may be found by implication from words or other conduct, including acquiescence, under the circumstances shown." [23]

The depositions and evidence before the court demonstrates that Lindsay Bros. *of Minnesota* was Clayton & Lambert's agent impliedly authorized to receive service of process in suits arising out of the purchase of silos from Lindsay Bros. *of Minnesota*. As to business transactions occurring elsewhere and not involving Lindsay Bros. *of Minnesota*, there is no showing that Lindsay Bros. was an agent of Clayton & Lambert for such transactions. Therefore, in *Ulrich* where the silo was purchased from Lindsay Bros. of Minnesota, the court holds there was valid service of process under Rule 4.03(c). In *McNeely* where the silo was purchased out-of-state from Lindsay Bros. *of Milwaukee*, a separate and distinct corporation, the court holds the attempted service of process ineffectual.

The depositions show that buying a silo is rather a unique experience. The cost is substantial and approaches that of a new house. Such a purchase is not like the ordinary purchase off-the-shelf from a distributor or dealer. Here, in *Ulrich*, there was a continual relationship and frequent communication among all parties, Ulrich, Lindsay Bros. and Clayton & Lambert. This is certainly not the case where the purchaser deals exclusively with the distributor having no contact with the manufacturer.

As above stated, advertising was done jointly by Lindsay Bros. and Clayton & Lambert under a contract of cooperative advertising, although Clayton & Lambert retained ultimate control and approval of all advertisements. Upon purchase of the silo from Lindsay Bros., literature was sent to Ulrich and other new customers including a warranty, a set of erection instructions, operating instructions, a booklet, a newsletter and other bulletins. Customers, including Ulrich, corresponded both with Lindsay Bros. and Clayton & Lambert. When Lindsay Bros. personnel traveled to Kentucky for sales meetings, Clayton & Lambert paid room and board and enter-

22. Lindstrom v. Minnesota Liquid Fertilizer Co., 264 Minn. 485, 497, 119 N.W. 2d 855, 862 (1963).

23. Fingerhut Mfg. Co. v. Mack Trucks, Inc., 267 Minn. 201, 204, 125 N.W.2d 734, 736 (1964).

tainment while Lindsay Bros. paid the transportation.

There is thus substantial evidence in *Ulrich* that Lindsay Bros. was Clayton & Lambert's agent in matters dealing with the warranty covering the silo, the erection and construction of the silo and the servicing and replacement of any defective parts of the silo. There were apparently various warranties from Clayton & Lambert given to the customer by Lindsay Bros.

While erection instructions were sent to the customer, the construction was controlled and handled by Lindsay Bros. Yet the people who did the actual construction of the silo at the site were trained by Clayton & Lambert. As part of this construction, several tests were necessary including tests on the machinery and the "air tightness" of the silo. If parts or replacement items were needed, Clayton & Lambert followed the instructions of Lindsay Bros., but all adjustments on the warranty and other instructions were handled by Clayton & Lambert through Lindsay Bros. Direct credit was then given to the customer. In one such instance, forty-two panels were replaced on Ulrich's silo tank by Clayton & Lambert employees and on other occasions James Francis, Sales Manager of Clayton & Lambert inspected Ulrich's silo accompanied by Lindsay Bros. personnel.

In addition, the above evidence in *Ulrich* amply demonstrates that Lindsay Bros., as an agent of Clayton & Lambert,

was impliedly authorized to accept service of process. As stated in Derrick v. Drolson Co., Inc., supra, 244 Minn. at 154, 69 N.W.2d at 131:

"When an agent is given broad authority to manage a part of a corporation's business, it follows that he is also, by implication, given the authority to receive service of summons involving actions against the corporation. Such authority is clearly inherent in and necessary to the proper management of the corporation's affairs. Moreover, practical considerations, as well as fairness and justice, require that the implied authority extend to receiving service in matters connected, not only with the particular portion of the corporation's business that has been entrusted to the agent, but with the corporation's business generally."

Lindsay Bros., while not the general agent or "managing agent" of Clayton & Lambert in Minnesota, was entrusted with a certain portion of Clayton & Lambert's business activities in Minnesota, i. e., its warranty, its erection and construction of the silo, and adjustments and other service after the sale.[24] Therefore, Lindsay Bros. was impliedly authorized to receive service on general business matters with which it dealt.

Ulrichs were in the "stream of marketing" as it were, of a product sold by defendant Clayton & Lambert to Lindsay Bros. *of Minnesota* and resold by it to Ulrichs. Insofar as Ulrichs' purchase

---

24. For cases reaching a similar result see, Jensen v. Van Norman Co., 105 F. Supp. 778 (D.Minn.1952) (service representative a proper agent under Minnesota law); Twin City Scenic Co. v. Flambeau Plastics Corp., 182 F.Supp. 743 (D. Minn.1960) (soliciting agent); and Szantay v. Beech Aircraft Corp., 237 F. Supp. 393 (E.D.S.C.) (distributor found to be the service and selling agent of the manufacturer), aff'd, 349 F.2d 60 (4th Cir. 1965).
Szantay has resulted in a long line of cases similar to the case at bar in the Federal District Courts of South Carolina.

See, Hughes v. Kaiser Jeep Corp., 246 F.Supp. 557 (E.D.S.C.1965); Bramlett v. Arthur Murray, Inc., 250 F.Supp. 1011 (D.S.C.1966); Siegling v. International Ass'n of Approved Basketball Officials, Inc., 262 F.Supp. 441 (D.S.C.1966); Ard v. State Stove Mfrs., Inc., 263 F. Supp. 699 (D.S.C.1967); Middlebrooks v. Curtis Publishing Co., 264 F.Supp. 373 (D.S.C.1967); American Iwer Corp. v. Reuland Elec. Co., 277 F.Supp. 375 (D.S.C.1967). See also, Scalise v. Beech Aircraft Corp., 276 F.Supp. 58 (E.D.Pa. 1967).

was concerned, Lindsay Bros. *of Minnesota* was an agent at least for the purpose of service of process in view of the many things Clayton & Lambert permitted it to do on the Ulrich transaction.

In *McNeely* the situation differs from *Ulrich*. McNeely was not in the "stream of marketing" of any product sold through Lindsay Bros. *of Minnesota*. Plaintiff McNeely bought his silo from Lindsay Bros. *of Milwaukee* and had no contact, so far as the evidence shows, with Lindsay Bros. *of Minnesota*. Presumably, McNeely turned to Lindsay Bros. *of Milwaukee* for his warranty protection, construction of the silo and other service. There is no evidence that Clayton & Lambert ever authorized Lindsay Bros. *of Minnesota* to deal with, or make warranties to, people other than their own customers. Plaintiff bears the burden here and the court does not have before it any evidence tending to indicate an agency relationship between Lindsay Bros. *of Minnesota* and Clayton & Lambert concerning the business activities of Clayton & Lambert unrelated to the specific silos sold by Lindsay Bros. *of Minnesota*. Accordingly, it also follows that Lindsay Bros. *of Minnesota* was not impliedly authorized to receive service of process in such situations.

It is certainly fair and reasonable to subject Clayton & Lambert to service of process in Minnesota on suits arising from the transaction of business within the State. However, in *McNeely* the complaint bears no relation to Clayton & Lambert's business activity within Minnesota. Sustaining the validity of service in this case would raise serious questions. See, Fisher Governor Co. v. Superior Court, 53 Cal.2d 222, 1 Cal. Rptr. 1, 347 P.2d 1 (1959) (Traynor, J.). The attempted service of process on Clayton & Lambert by plaintiff McNeely is hereby quashed. This renders unnecessary a decision on Clayton & Lambert's motion to transfer venue under 28 U.S.C. § 1404(a).

Separate orders have been entered in each case.